CASE 8—EQUITY—MARCH 1, 1883.

# Clarke, &c., v. Rogers, &c.

APPEAL FROM BOURBON CIRCUIT COURT.

1. The general assembly cannot delegate its power to enact laws, but whether or not the law enacted shall become operative, may be made to depend upon the popular will.
2. The acceptance or rejection of a city charter may be made to depend upon the local majority.
3. Officers required to be elected by the constitution cannot be continued in office by legislative enactment without consulting the popular will, and but for the submission of the question to a popular vote, the provision of the charter of Flemingsburg continuing the trustees thereof in office until an election could be held under it for city officers, would be open to constitutional objection.
4. The statute has provided for the means of contesting elections, and where no provision has been made applicable to the particular case, the result, as certified by those holding the election, must determine the issue.

M. M. TEAGER AND W. J. HENDRICK FOR APPELLANTS.

1. The questions involved in this case have already been decided in the case of Moore, &c., v. McDowell, &c., MS. opinion, May 25, 1882.

Clarke, &c., v. Rogers, &c.

2. This court held in that case that the charter of Flemingsburg was legally adopted by a vote of the majority of the qualified voters of that town; and being adopted, the tax was properly imposed upon appellees.

ANDREWS & SUDDUTH FOR APPELLEES.

The act known as the new charter of Flemingsburg never went into effect —

1. Because the majority claimed was not sufficient.
2. Because there was not a majority cast in favor of its adoption.
3. The question as to the right of appellants to levy the tax is put in issue by appellees' reply, and appellants have failed by any proof whatever to show that they had taken the oath required by law. (9 Bush, 247; Acts 1879, vol. 2, p. 855; 16 Minn., 249; Sedgwick on Construction of Statutes, 2d ed., 533.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellees in this case were hotel-keepers in the town of Flemingsburg, claiming the privilege of selling liquors in quantities less than a quart. The board of councilmen of that town imposed a tax on this privilege of retailing liquors of $200, and the object of this proceeding is to enjoin its collection, on the ground that they were not officers of the town, and had no right to impose such a burden. The injunction was made perpetual, and of this the appellants complain.

Under the charter of the town prior to August, 1880, the trustees of the town were elected on the first Monday in August of each year, for the term of one year, and until their successors qualified.

The appellants, or some of them, were elected trustees on the first Monday in August, 1879, and others appointed to fill vacancies during the term, as authorized by the charter. Clarke was the town marshal. The tax under the old charter for the privilege of retailing liquors could not exceed fifty dollars.

Clarke, &c., v. Rogers, &c.

It is alleged by the appellees that the term of office of the appellants expired on the first Monday in August, 1880, and that others had been elected trustees in accordance with the charter, and on the 23d of August had granted to them a license as hotel-keepers for the year, to end 23d of August, 1881, and that this tax had been paid, and that appellants, without right or authority of law, had not only imposed a tax of $200, but had authorized the town marshal to collect it.

The legislature, by an act passed on the 29th of April, 1880, created a *new charter* for the town of Flemingsburg, and submitted its provisions for acceptance or rejection to the qualified voters within the town boundary. If a majority of the qualified voters favored the charter at the election to be held on the first Monday in August, 1880, the new charter was to take effect on the 8th day of that month. The charter in nowise affected the citizens of the town or the town government until it was adopted by the popular vote.

The new charter also contained a provision that the trustees in office under the old charter were to continue in office as councilmen until the first Monday in January following, at which time, and in each year thereafter, councilmen were to be chosen by the popular vote.

The ordinance imposing the tax of $200 was passed on the 17th of September, 1880, more than one month after the new charter had been accepted, and when the appellants, as they insist, were properly in office, by reason of the provision of the charter creating them councilmen from the date of its acceptance, which was on the first Monday in August, 1880, until the regular election for councilmen could be held in the month of January following. The new

charter fixed the maximum tax at $200; so if the appellants were in office, they had the right to impose it. The act, if ratified by the people, took effect on the 8th day of August, 1880, and therefore the trustees who claim to have been elected for another year, without regard to this new charter, had no power to grant the license on the 23d of September, 1880, as the appellants were then in office.

Section 37 of the new charter provides that "all acts or parts of acts which may come in conflict with any of the provisions of this act be, and are hereby, repealed;" but also provides that it shall not take effect until the 8th of August, eight days from its adoption. It is plain that the legislature did not intend to repeal the old charter until the ratification of the new charter by a popular vote; but it is equally certain that when the new charter was accepted it repealed the old charter, and those holding office under the old charter, or who were elected on the first Monday in August, were no longer officers of the town. If elected as trustees, they were elected subject to have their right to hold the office terminate the moment the new charter was adopted.

The legislature had the right to substitute the new charter for the old without consulting the popular will on the subject, and when the act creating the new charter was ratified by the people, those who were elected under the provisions of the old charter ceased to be officers of the town. If the trustees elected on the first Monday in August, 1880, were officers at all, they continued to be such for eight days only, as the new charter went into effect on the eighth of the month. Whether the legislature intended the town to be without any municipal government for the eight days is not necessary to determine, but a reasonable construction of the

act is, that the old charter was in force until the new one came into being.

The question as to whether this new charter was adopted in accordance with its provisions—that is, by a majority of the qualified voters of the town—has been heretofore decided by this court in a controversy between the trustees claiming to hold under the old charter and the councilmen holding under the new charter. This court held that the new charter was in force, and this settles the question. It is argued here, as in the former case between the two sets of trustees, that a majority of the qualified voters did not favor the new charter; that illegal votes were cast, and other irregularities existed in the conduct of the election that rendered it invalid. A court of equity is asked, in effect, to hold another election for the purpose of determining who were legal voters, and to purge the polls by striking from the list of recorded votes those who had no right to participate in the election. The testimony for and against the right of the citizen to vote is asked to be weighed by the chancellor, and determined from the testimony. A court of equity should neither invite or claim such a jurisdiction.

The statute has provided the means of contesting elections, and where there is no provision applicable to the particular case, the final result, as certified to by those holding the election, must determine the issue. It would be enlarging the field of equity jurisdiction to determine that it is the duty of the chancellor to investigate the rights of the citizen at the ballot-box in the election of the municipal officers of towns and cities in the State, and by his judgment upon the issue only as to who could exercise the right of suffrage in the particular instance, select those who are to

fill such offices. (Trustees Common School District v. Garvey, &c., 80th Ky.)

The attempt of the legislature to take from the voters of an incorporated city or town the privilege of selecting their officers by a popular vote is the legitimate subject of inquiry, and this brings us to the consideration of the constitutional question raised in this case for the first time on a petition for a rehearing. While a constitutional question will seldom be considered, unless made either in the court below or in this court by counsel, on the original hearing, it may be proper to dispose of the question made.

Section 36 of the new charter provides, that "the present board of trustees of Flemingsburg, and the police judge and marshal, shall hold their offices till the election provided for in this act, on the first Monday in January, 1881, and until their successors are duly qualified."

Section 6, article 6, of the state constitution provides, that "officers for towns and cities shall be elected for such terms, and in such manner, and with such qualifications, as may be prescribed by law."

It is claimed that the provision of the new charter, by which the appellants were continued in office from the first Monday in August, 1880, until the first Monday in January, 1881, is in violation of this clause of the constitution. That the new charter, when it came from the legislature, was a complete law, must be conceded, as the popular vote did not determine its validity, but its going into operation depended upon its subsequent acceptance by the majority vote.

The legislature cannot delegate its power to make laws, but when enacted, whether or not the law shall become operative, may be made to depend on the popular will. The charter, which is the constitution of the city or town

to which it applies, is the creature of the legislature, and powers of local legislation even may be granted to the municipality by its provisions.

The acceptance or rejection of the charter may also be submitted to the local majority. (Cooley on Constitutional Limitations, pages 143-230.)

The legislature, in this particular instance, saw proper to change the organic law of the town of Flemingsburg, and to convert the town into a city, making its municipal government similar, in many respects, to that of the other cities in the State. It was deemed expedient to submit the new charter to the people for their approval, and as officers under the new charter could not be elected until the new charter was accepted, it was provided that the trustees then in office should hold over until the election could be held for its acceptance or rejection.

Under our elective system, by reason of the provision of the constitution in regard to the election of officers for towns and cities, and other provisions of that instrument relating to state and county officers, the legislature has no power to appoint to office, or to continue in office such officers as, by the provisions of the constitution, are made elective, and the attempt to exercise such a power by legislative enactment is in plain violation of its provisions.

Section 10 of article 6 of the constitution provides that "the General Assembly may provide for the election or appointment, for a term not exceeding four years, of such other county or district ministerial and executive officers as shall, from time to time, be necessary and proper; but officers required to be elected by the constitution cannot be appointed to or continued in office by legislative enactment

Clarke, &c., v. Rogers, &c.

without consulting the popular will; and the provision of the charter of Flemingsburg continuing the trustees in office until an election could be held under the new charter for town officers, would be open to constitutional objection but for the submission of the question to the popular vote. While the act, as before stated, came from the legislature a perfect law, the provision requiring that the people should vote for the measure before it could be made effectual, relieved it of the constitutional objection now urged. All the provisions of the charter the legislature had the right to adopt but this one without submitting it to the people; and if such had been the character of the act, with the proviso that, as to this particular clause, the people should first approve it by a majority vote, and the approval had been made, the popular will having been consulted, there could be no reason for holding any part of the act invalid. In this case there is no effort, either directly or indirectly, to take from the voters of the town the right to select their own municipal rulers without first consulting their wishes, and the entire charter having been submitted and adopted by a majority vote, the trustees who claim to have been elected by the appellees were not in office when they granted the license, but the appellants under the ·charter were the councilmen of the city of Flemingsburg, and as such had the right to impose the tax.

The judgment is therefore reversed, and cause remanded, with directions to dissolve the injunction.