E.   C. ORRICK v. CITY OF FORT WORTH ET AL.

Decided November 14, 1908.

**1.—City Council—Appointment of Officer.**

The charter of a city provided for choice of a city attorney by the council; by a new charter such officer was to be elected, and S., who received a majority of the votes, was declared by the city council chosen to that office. It was claimed by the former incumbent that the new charter was unconstitutional. Held that the action of the council was equivalent to his selection under the old charter, which was in force if the new one was invalid, and the court would not inquire into the validity of the new charter or election under it or of the reasons moving the council to declare him chosen.

**2.—Constitution—Delegating Legislative Power.**

An Act of the Legislature creating a new special charter for a city, but providing that it should be of no further force or effect if rejected at an election of the voters of the city, was not unconstitutional as being a delegation of legislative power.

**3.—Constitution—Title of Act—City Charter—School District.**

A new special charter entitled an Act to incorporate and define the powers of a city, was not unconstitutional because it also enacted that such city should constitute an independent school district under the government of trustees whose election was provided for by such charter. This provision was germaine and subsidiary to the matters embraced in the title of the Act and was not necessary to be specially enumerated in such title.

**4.—Same.**

The failure to enumerate in the title of an Act a subject of legislation embraced therein, is fatal to the validity of only the part of the Act not embraced in the title, if this can be separated from the other provisions.

**5.—Statute—Emergency.**

The Legislature is judge of the emergency requiring a law to take effect at once; and a recital in an Act creating a new charter for a city that the existing one was wholly insufficient and unsuitable and that there is an immediate necessity for enlarged powers, is held to refer to the necessity that the Act take effect at once, as well as to that for suspension of the rules governing its passage, and to show a sufficient declaration of emergency with relation to the time of its taking effect.

**6.—Elections—Special City Charter.**

A special city charter contained provisions concerning the manner of its submission for adoption to the voters of the municipality and the form of the ballot, and these were substantially complied with in the election. Held that the charter, as the latest expression of legislative will, prevailed over the general election law, where in conflict therewith.

**7.—Election—Collateral Attack.**

Mere irregularities in the manner of conducting an election will not suffice to require it to be held void in a collateral attack on the declared result.

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*John W. Wray,* for appellant.—The Act of the Legislature known as the "new charter" of the city of Fort Worth, and so referred to in the pleadings, is unconstitutional and void, in that the same is a delegation of legislative power by the Legislature of the State of Texas to the people, and that in no sense can the validity of said Act or its operation or its effect be determined by the people—certainly in no event on the submission to them in the manner and on the conditions under which the said "new charter" and the Act embodying the same was submitted to the people of the city of Fort Worth under the directions contained therein. State v. Swisher, 17 Texas, 441; Giddings v. San Antonio, 47 Texas, 548; San Antonio v. Jones, 28 Texas, 31; Wright v. Cunningham, 91 S. W. (Tenn.), 297; Dillon on Municipal Corporations, sec. 44; Cooly on Constitutional Limitations, 7th ed., 163.

The court erred in rendering judgment against the plaintiff, for that the Act of the Legislature aforesaid creating the new charter of the city of Fort Worth is unconstitutional and void in that it creates in the same Act two corporations, to wit, the corporation of the city of Fort Worth defining its powers and prescribing its duties, and the corporation of the school trustees of the city of Fort Worth prescribing its powers and defining its duties, for the title of the Act does not in anywise indicate that two corporations are created by said Act and said Act contains two sub-

jects and objects. Ex parte Conner, 51 Ga., 571; King v. Banks, 61 Ga., 20; San Antonio v. Peck, 51 Texas, 490.

The court erred in rendering judgment against the plaintiff, for that the Act of the Legislature embodying the new charter of the city of Fort Worth did not go into effect until ninety days after the adjournment of the Legislature, for no emergency requiring that the Act should go into effect at once was recited either in the preamble or in the body of the Act. Texas Constitution, secs, 32, 39, art. 3; Wicks Nease Co. v. Watts, 70 S. W., 1001; Day Co. v. State, 68 Texas, 543; Belcher v. State, 44 S. W., 519; Jameson v. State, 24 S. W., 508.

A question submitted to the people at a general municipal election, which is not submitted on the official ballot, to wit, the ballot containing the names of the officers to be elected, is no submission, and being a departure from the law in a matter of substance, the election, in so far as it relates to the question, is void. If we are right in our contention that the wording of the section merely prescribes a form of submission, the case of Harvey v. Cook Co., 77 N. E., 424, applies, and settles the question as to our correctness.

Two elections, separate in all things, can not be legally held by the same officers at the same time in the same ballot-box, and when so held they are void. This proposition is submitted as the alternative of the above in case the court should hold that the election on the charter was a separate and distinct election from the regular city election.

*A. B. Curtis* and *Sidney L. Samuels,* for appellees.—It was competent for the Legislature to make the charter dependent on the result of an election held for that purpose, and in so doing it was not a delegation of legislative power prohibited by law. Johnson v. Martin, 75 Texas, 33, and cases cited; Graham v. Greenville, 67 Texas, 62; Werner v. City of Galveston, 72 Texas, 27; Dobbins v. City of San Antonio, 2 Texas U. C., 709; Clarke v. Rogers, 81 Ky., 43; People v. City of Butte, 47 Am. Rep., 346; City of Patterson v. Society, 24 N. J. L., 385; People v. Solomon, 51 Ill., 55; Bank of Chenango v. Brown, 26 N. Y., 467; Commonwealth ex rel. Lyon v. Painter, 10 Pa. St., 214; 56 Pa. St., 361; Commonwealth v. Judges, 8 Pa. St., 395; City of Brunswick v. Finney, 54 Ga., 317; Cooley on Const. Lim. (5th ed.), star pages 118, 119; 1 Dillon on Mun. Corp. (4th ed.), sec. 44, top page 77.

There was but one subject embraced in the Act, and that was sufficiently indicated in the title, for that the schools were incidental to and a part of the governmental scheme of the city and in no sense foreign to the purposes for which the charter was granted. Fahey v. State, 27 Texas Crim. App., 146; Austin v. Gulf, C. & S. F. Ry., 45 Texas, 266; Doeppenschmidt v. Railway Co., 101 S. W., 1080; City of Jonesboro v. Cairo Ry. Co., 110 U. S., 192, Law ed., book 28, p. 116; McGurn v. Board of Education, 24 N. E., 531; State ex rel. Nash v. Madson, 45 N. W., 856; Logan v. Solano Co., 3 Pac., 464; Johnson v. Harrison, 47 Minn., 575.

If there were two subjects in the Act only that part not expressed in the title would be affected thereby, and this would mean the elimination of the school provisions from the charter, leaving the other provisions

of the charter standing intact. Sec. 35, art. 3 of the Const.; Clark v. Finley, 93 Texas, 176; Sweeney v. Webb, 76 S. W., 769.

If the school sections of the charter were tainted with invalidity, appellant is in no position to attack the same nor do his contentions involve their consideration. McLaury v. Watelsky, 87 S. W., 1048; Sweeney v. Webb, 76 S. W., 770; Bowman v. State, 40 S. W., 796; Cooley, Const. Limitations (5th ed.), top page 215, star pages 180, 181.

The facts are sufficiently recited in the Act of the Legislature to show that an emergency existed, and that it was the intention of the Legislature that the Act should go into effect at once, immediately upon its approval by the governor. Williams v. Taylor, 83 Texas, 671; Jameson v. State, 24 S. W., 508.

The provisions of the Terrell Election Law do not apply to a special election such as the election on the matter of the city charter. Walker v. Mobley, 103 S. W., 490; Durham v. Rogers, 106 S. W., 906.

CONNER, CHIEF JUSTICE.—As a preliminary statement of the nature and result of this suit we adopt that furnished us by appellant, viz.:

"This was a suit instituted by E. C. Orrick, against the City of Fort Worth and Sidney L. Samuels, to recover the office of city attorney of the City of Fort Worth and the emoluments thereof. The petition sets out substantially in detail the facts which are set forth in the statements of facts following, and alleged the invalidity of the charter on six separate and distinct grounds, five of which will appear in this brief under proper assignments of error, and the facts with reference to each will appear in the statement of facts following. Briefly stated, the five grounds are:

"1. The Act is void because it is a delegation of legislative power.

"2. Because it contains two subjects and objects, only one of which is stated in the caption, and the Act as passed is not separable.

"3. The Act is wanting in a proper emergency clause to put it into immediate effect.

"4. The ballot used in the charter election was void.

"5. The election of officers was held at a time sooner than in law it could be held.

"The defendants answered separately, but with identical answers, beginning with a general denial and pleading in addition thereto that the elections were held in conformity with the charter of the City of Fort Worth, and were in all respects legal and regular, and that the charter of the City of Fort Worth was adopted by the people, duly canvassed, and that said Sidney L. Samuels was duly elected city attorney under said charter and duly qualified.

"*Statement of facts.*—The facts in this case were all agreed upon as appear from the agreed facts filed in a statement of facts in this cause. In so far as necessary to be stated here we make this summary:

"1. E. C. Orrick, the plaintiff, was on the 7th day of May, 1907, and had been for some years the city attorney of the City of Fort Worth, duly elected and qualified under the city charter of 1901.

"2. That in March, 1907, the Legislature passed the charter of the

City of Fort Worth, referred to in the pleadings as the new charter, which charter appears in the Special Acts of the Legislature of 1907.

"3. That the election was ordered by the city council of the City of Fort Worth under section 164 of the charter of 1907, for the purpose of submitting to the people the new charter as provided by the Act. That this call provided that the style of the ballot to be used should be as follows:

'Official Ballot.
For the New Charter.
Against the New Charter.'

And the said election was called for the 2d day of April, 1907, which said 2d day of April was the regular election day for the election of officers under the city charter of the City of Fort Worth then in existence. That the above ballots were used at said election.

"4. That the city council at the same time ordered an election for the officers to be elected at the regular election on the 2d day of April, to wit, the assessor and collector and the city marshal. That the two elections were called to be held in the same place and by the same officers, and were so held, and were held in the same ballot-boxes. That the candidates for the offices to be elected had been prior to said election regularly nominated by the Democratic party, and the ballot used for the election of officers was as follows:

'Official Ballot.
Democratic Party.

For Marshal,
James H. Maddox.

For Assessor and Collector,
W. J. Gilvin.'

That the two ballots were on separate pieces of paper and were deposited by the voter in the same ballot-boxes. That the result of the election was largely for the new charter and for the Democratic nominees.

"5. That the city council duly canvassed the ballots cast, both on the charter and on the officers, and duly declared the result. That thereafter, to wit, on the 10th day of April, 1907, the mayor called an election for officers to fill the offices made elective by the new charter, and said election was by him called for the 4th day of May, 1907. That no primaries were held by the Democratic party and no party nominees were placed upon the official ballot for said election. That the Democratic Executive Committee, of which Sidney L. Samuels was chairman, was not called together for the purpose of calling a primary or considering the same. That after the vote on the charter was canvassed, and before the election for officers was called thereunder, plaintiff called on Sidney L. Samuels, then chairman as aforesaid, and requested that a primary be called or that the committee be called together for the purpose of considering the calling of a primary, and he said that he would willingly call the committee together for such purpose if time was given.

"6. That a meeting was held under the auspices of the board of trade in the city of Fort Worth under rules and regulations prescribed by it

on the 10th day of April, 1905. That W. D. Harris was nominated for mayor and Sidney L. Samuels was nominated for city attorney, and the present commissioners of the City of Fort Worth were nominated for their offices, and the ticket so designated was designated as the citizens' ticket and was so placed upon the official ballot.

"7. That the call for the election, while of date of the 10th of April, 1907, was published for the first time on the 11th day of April, the day after said convention nominated the citizens' ticket. That said Samuels was not consulted about the time at which the election was to be held nor when it was to be called. That he did not know when it would be called nor the date for which it would be called.

"8. That the election so held resulted in a majority for Sidney L. Samuels, and the city council canvassed the vote and declared the result, and sometime during the day of the 7th of May the commissioners took charge of the city government and said Samuels qualified as city attorney.

"9. That there are now, and have been for many years in the City of Fort Worth, executive committees of both the Democratic and Republican parties, and the plaintiff for many years has been a Democrat; that is, a member of the Democratic party.

"10. That the city council, on canvassing the vote taken for officers aforesaid, ceased to perform any duties with regard to the city government, and the mayor, commissioners and city attorney, who had been declared by the city council to have been elected, proceeded to perform the duties of their respective offices according to and under the new charter.

"11. That the mayor, commissioners and other city officers immediately, upon the qualification of said Samuels under the new charter, recognized him and him only as the city attorney of said city, and paid him as the same became due the salary of the city attorney.

"12. That the plaintiff has offered to perform the duties of the office and at all times been ready and willing to perform said duties, but as a matter of fact the office has been in fact occupied by said Samuels since his qualification.

"The court on hearing rendered a judgment for the defendant; plaintiff excepted, filed his bond and assignment of errors, and the case is before the court for consideration."

Prior to the Act attacked in this proceeding Fort Worth was a city having a population largely in excess of ten thousand, and as such was duly incorporated by Special Act of the Legislature approved April 10, 1901. (See Special Laws 1901, page 13.) By the charter of 1901 the municipal government was vested in a city council composed of the mayor and an alderman from each of the nine wards of the city. Among other powers, the city council were authorized "by the vote of the majority of the aldermen composing the city council, and in case of a tie, the mayor . . . ," to elect (among other officers) a city attorney. These elections were required at the first regular meeting in April, 1901, and every two years thereafter. The city attorney was to receive a salary of twenty-five hundred dollars per year and to hold office for "two years, and until his successor shall have been elected and qualified." In April, 1905, Mr. Orrick, appellant herein, was for the second time elected city attorney of the city, and duly qualified and acted as such until the elec-

tion and qualification of appellee Sidney Samuels in May, 1907, under the Act assailed in this suit.

By special Act—the one here in controversy—approved February 26, 1907 (see Special Laws, 1907, page 84), the Legislature granted a new charter to the city of Fort Worth. The charter changed the general plan of city government from the old or aldermanic system to that known as the commission form, the officers consisting of a mayor, four commissioners, a city attorney and certain other officers, who were made elective by the qualified voters of the city without regard to ward lines. This Act, among others, contained the following sections deemed pertinent here:

"Sec. 127. All property, real and personal, belonging to the City of Fort Worth, is hereby vested in the corporation created by this Act, and the officers of said city now in office shall continue to exercise the powers, functions and duties, and to receive the emoluments and compensation herein prescribed, until they shall have been severally superseded by the election or appointment and qualification of their respective successors as hereinbefore provided.

"...........................................................
"...........................................................

"Sec. 162. The Special Act of the Legislature of Texas, entitled 'An Act to incorporate the City of Fort Worth, and to grant a new charter to said city,' approved April 10, 1901, and all amendments thereof and thereto, and all other laws and parts of laws in conflict with the provisions of this Act, are hereby repealed.

"...........................................................

"Sec. 164. It shall be the duty of the city council of the city of Fort Worth at a regular meeting, or at a call meeting for that purpose within ten days after the passage of this Act, to order an election for the purpose of submitting the question to the qualified voters of the City of Fort Worth to determine whether or not the City of Fort Worth will accept and adopt this charter for the government of said city. And if for any reason the city council should fail to order said election within said ten days, then it shall be the duty of the mayor of the City of Fort Worth to at once order the same, and for such purpose he is hereby vested with the power and authority vested in the city council by this Act to carry out the purposes of this section. Said order of the city council shall designate the date upon which said election shall be held, which date shall be not less than twenty nor more than thirty days from the date of such order. And when such election shall have been ordered the city council shall cause twenty days' notice thereof to be given in one or more newspapers published in the City of Fort Worth, which notice shall state the purpose of said election. The said order of the city council shall also direct the printing of the ballots to be used in such election, and the same shall provide that the ballot of those favoring the adoption of this charter shall read, 'For the new charter,' and those opposing the adoption of the new charter shall read, 'Against the new charter.' The said election, except as herein otherwise provided, shall be held and the returns thereof made and canvassed in accordance with the provisions of laws applying to elections held within the City of Fort Worth under the present provisions of its charter and

of the laws of the State of Texas governing the same; and all require-
ments and penalties applying to general elections shall apply to said
election. The expense for holding such election shall be paid by the City
of Fort Worth, and if a majority of the votes cast at said election shall
be in favor of the new charter, then the city council shall so declare and
the same shall be in force from and after the date of the canvass of the
returns by the city council, which canvass of the returns shall be made
by the city council within five days after the date of holding said elec-
tion; and if a majority of the votes cast at said election shall be against
the new charter, then the city council shall so declare, and this Act shall
be of no force nor effect."

*Opinion.*—Appellee asserts as an independent proposition, in reply to
all assignments of error, that "If it were assumed that the new charter
never became effective, but that the old charter was still in effect, then
the city council, by its own choice and of its own volition, selected and
elected, as it had a right to do, Sidney L. Samuels as city attorney of
the City of Fort Worth." No satisfactory answer to this proposition has
been presented or suggests itself to our minds. The charter of 1901,
as stated, conferred the power of election upon the city council and fixed
the term of office at two years without prescribing the method or man-
ner of election. In such case the courts will not undertake to inquire
into the reasons that may have influenced the city council, or to de-
clare invalid in a collateral proceeding, such as this, any action on the
part of the council, even if irregular, that was equivalent to an election.
It would seem, therefore, to be immaterial to the inquiry before us that
the city council, before declaring Mr. Samuels to be the city attorney,
first sought the will of the citizens to be affected under a void election
law. The material facts would seem to be that, in a manner and for
reasons satisfactory to the aldermen and mayor, appellee Samuels, after
the expiration of appellant's term under the charter upon which this
suit is based, was declared elected city attorney. This election is not
attacked as intrinsically unfair, nor is it contended that appellee's ac-
ceptance and qualification for the office was other or different in sub-
stance from what it would have been had all parties concerned under-
stood that they were acting under the charter of 1901, instead of that
of 1907. In view, however, of the great importance of the questions
presented to the citizens of Fort Worth, involving as they do the validity
of many municipal acts, including the issuance of a large amount of
city bonds, we do not care to rest our decision upon the question above
suggested, or to further elaborate it, but will proceed to determine the
questions presented relating to the validity of the Act and charter of
1907, from which we have quoted.

First, then, was said Act void because it delegated legislative power
to the people of the city in contravention of the Constitution? We think
not. It is true that the Act (sec. 164) provides that, "if a majority of
the votes cast at said election (the election provided for by the Act)
shall be against the new charter, then the city council shall so declare,
and this Act shall be of no force nor effect." But this, in our judgment,
is not to be construed as conferring upon the people the power of re-
peal, as appellant urges. When construed as a whole, a more reasonable

construction is that the Legislature intended the Act of 1907 to operate immediately, to the exclusion of all other conflicting laws, in so far as necessary or proper thereunder to elicit the will of the electors in reference of the new charter, and to declare the entire Act, including the charter, of no further force or effect in event of the contingency of an unfavorable vote. The Legislature declared the repeal, if one, and if it may be so termed, merely submitting to the people the question of whether the new charter *as contained in the Act* was acceptable. We find nothing in our Constitution forbidding such legislation, and it is of a character very generally approved by the authorities. We quote from Cooley on Constitutional Limitations (fifth edition), top page 141 (star page 118), as follows: "Nevertheless, as the corporators have a special and peculiar interest in the terms and conditions of the charter, in the powers conferred and liabilities imposed, as well as in the general question whether they shall originally be or afterwards remain incorporated at all or not, and as the burdens of municipal government must rest upon their shoulders, and especially as by becoming incorporated they are held, in law, to undertake to discharge the duties the charter imposes, it seems eminently proper that their voice should be heard on the question of their incorporation, and that their decisions should be conclusive, unless, for strong reasons of State policy or local necessity, it should seem important for the State to overrule the opinion of the local majority. The right to refer any legislation of this character to the people peculiarly interested does not seem to be questioned, and the reference is by no means unusual." We add the following quotation from Dillon, Municipal Corporations (fourth edition), volume 1, section 44, top page 77: "But while the Legislature is not bound to obtain the acceptance or assent of the municipal corporation, it is well established that a provision in a municipal charter that it shall not take effect unless assented to or accepted by a majority of the inhabitants, is not unconstitutional, it being in no just sense a delegation of legislative power, but merely a question as to the acceptance or rejection of a charter."

In Clarke v. Rogers, 81 Ky., 43, it is said (quoting from the headnote): "The general assembly can not delegate its power to enact laws, but whether or not the law enacted shall become operative may be made to depend on the popular will." A familiar illustration of this principle may be found in our own legislation by referring to the local option laws. The laws are enacted and repeal all laws in conflict, but whether they shall operate in a given county or precinct depends entirely upon the will of the qualified voters of such district. These laws have long been upheld as against many assaults, and the procedure under discussion received recognition by our Supreme Court in the case of Werner v. City of Galveston, 72 Texas, 27, where, in discussing one of the cases cited by appellant herein, it is said: "But it does not follow from this that the Legislature has no authority to confer a power upon a municipal corporation and to authorize its acceptance or rejection by the municipality according to the will of the voters as expressed at the ballot-box." And in discussing an Act incorporating the city of San Antonio our Supreme Court, in San Antonio v. Jones, 28 Texas, 19, say, among other things: "Nor is a statute, whose complete execution and applica-

tion to the subject matter is, by its provisions, made to depend on the assent of some other body, a delegation of legislative power." See, also, Graham v. City of Greenville, 67 Texas, 62, and Werner v. City of Galveston, 72 Texas, 22. We overrule all assignments raising this question.

Appellant next contends that the Act of 1907 is void in that it contains two subjects, only one of which is stated in the title. Our Constitution provides that: "No bill (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed." (Article 3, section 35, State Constitution.) The title to the Act in question is as follows: "An Act to incorporate the City of Fort Worth, Tarrant County, Texas, and to grant it a new charter; to define its powers and to prescribe its duties and liabilities; to provide for its approval by the qualified electors of said city, and to declare an emergency." (Special Laws 1907, page 81.) The Act in question, as may be seen by reference thereto, in addition to providing complete plan and power for the purely civic government of the municipal body, also declares that the city shall constitute an independent school district under the government of seven trustees, whose election is provided for. These trustees are given complete control of the public free schools in the city, it being provided only that the treasurer of the City of Fort Worth should be the treasurer of the board of school trustees, and that the assessor and collector of the city taxes should be the assessor and collector of taxes for the board of school trustees, and that the "assessor and collector shall assess and collect the taxes for school purposes, and the levy for taxes for school purposes in the City of Fort Worth shall be based upon the same assessment of property upon which the levy for other city purposes is based, and said taxes for school purposes shall be assessed and collected as other city taxes are assessed and collected." The trustees, however, were given the power to fix the rate at which taxes should be assessed (sec. 157), and generally given such powers as may be exercised by the trustees of independent school districts. The basis of appellant's contention is substantially that the Act creates two independent corporations, to one of which the title of the Act has no reference, and that, therefore, the entire Act must be annulled. The question thus presented perhaps involves greater uncertainty than any other presented in the case, but while the section of the Constitution quoted has uniformly been held to be mandatory, its interpretation has always been liberal when necessary to sustain the validity of a law. See Austin v. Gulf, C. & S. F. R. R. Co., 45 Texas, 266; Cooley, Const. Lim., 216 (6th ed.). Says our Supreme Court in Doeppenschmidt v. International & G. N. R. Co., 100 Texas, 532: "It would be burdensome, if not intolerable, to require that the title should be as full as the Act itself. The word 'title' implies that no such requirement exists. The purpose of the constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, to the end that surprise and fraud in legislation may be prevented." In the case of McGurn v. Board of Education, 24 N. E., 531,

it was urged that an annexation Act of the Legislature of Illinois was void in so far as it related to public schools and school property, because of its being violative of that part of the Illinois Constitution which provides that "no Act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The court in construing the Act had this to say:

"The subject expressed in the title to said Act is 'the annexation of cities, incorporated towns and villages, or parts of same, to cities, incorporated towns and villages.' The contention is that the several municipal corporations named in the said title on the one hand, and school districts, school townships and boards of education on the other, are two distinct classes of corporations existing under different laws, having different functions, power and objects, and constituting wholly dissimilar and dissociate governmental agencies, and therefore that those portions of the Act relating to these various school corporations relate to a subject entirely foreign to that of uniting adjoining cities, incorporated towns and villages by annexation. We are unable to see any such repugnancy or incompatibility between the functions, powers and objects of these two classes of corporations as to render it improper for the Legislature, in its discretion, to commit them all to a single class of corporations. It is a well-known fact that in the past history of our municipal corporations the support, control and management of public schools have not infrequently been placed directly in charge of city governments. Whether that is the best or wisest mode of organizing and maintaining public schools has nothing to do with the question. Nor is the repugnancy between the functions of these two classes of corporations established by the fact that, by our present school law, the charge and control of schools in cities having over one hundred thousand inhabitants is committed to a board of education—an organization which in some points of view is to be regarded as a subordinate department of the city government, and in others as an independent municipal corporation. Such distribution of municipal powers simply shows that, in the judgment of the Legislature, a board of education is the best instrumentality for taking charge of and maintaining a system of free schools within the city, and not that the same functions might not constitutionally have been committed directly to the city."

In the case of the State ex rel. Nash v. Madson, 45 N. W., 856, the Supreme Court of Minnesota had under consideration the question. of duality of subject, upon the ground of which the Act had been assailed, to wit, the subject of a municipal government and the maintenance of public schools, no allusion to the schools having been made in the title. After adverting to the well-known principle that a liberal rather than a strict construction obtains in such matters, the court said:

"These institutions (schools) are an important feature in every municipality. They are part of them, closely connected in many ways, using the municipal officers and machinery in the levying and collecting of their revenues, and frequently, as will be seen upon examination of the various charters in this and other States, fully recognized as a legitimate object of legislation when dealing with the subject of municipal government. Indeed, it matters not that an Act embraces, tech-

nically, more than one subject, one of which only is expressed in the title, so that they are not foreign and extraneous."

Without citing other authority, the cases from which the above quotations are made, and which are cited by appellees, tend to show, as appellees insist, the trend of the judicial mind, and we think an application of the construction thus indicated to the title under consideration fairly supports appellees' contention that the subject and government of the public free schools in the City of Fort Worth are sufficiently comprehended in the title to the special Act of 1907. Under the simple title, "An Act to incorporate the City of Fort Worth and to grant a new charter to said city," the City of Fort Worth was incorporated in 1901, as hereinbefore shown. Under this charter appellant claims rights, and it deals very fully with the subject of the free schools of the city. It provided for the election of trustees by the city council, but declared that "the public free schools of said city shall be under the control and supervision of such board of trustees, and said board when appointed shall have the power to control, manage and govern said schools in all things and matters, and order the payment of school funds for school purposes, and shall have power to elect a superintendent of public schools in said city, and to select all teachers and fix the salaries thereof," and it is a matter of public history in this State that many of our cities have assumed control of the public free schools within their limits, sometimes directly through the city council and in other instances through the intervention of trustees with powers generally such as given to the trustees in the Act of 1907, and it would seem that the "subject" is fairly germane—subsidiary—to the main subject indicated in the title of the special Act under consideration, and hence not subject to the objection urged. McMeans, Tax Collector, v. Finley, 88 Texas, 515. But should we be mistaken in this view, the Constitution itself declares the consequence. The very provision relied upon by appellant and above quoted says: "But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed." If it be true that the courts should in any case annul an entire Act notwithstanding the constitutional direction above given, we think we are safe in saying that it would only be done with the greatest hesitation, and only in cases where the subject not embraced in the title was so inseparably connected with the subject stated in the title as that a reasonable presumption was afforded that the Legislature would not have enacted the law without the inclusion of the subject tainted with invalidity. It would seem that the relation between the subjects under discussion here is by no means necessarily interdependent. All provisions relating to the government of the public free schools might be expunged from the Act of 1907 and there yet remain everything necessary for the establishment and government of an incorporated municipality, with power in the people to assume control of the free schools under the general laws. Besides, it is certain that appellant is not seeking, nor entitled to, relief under any provision of the Act relating to the subject of free schools, and hence we may decline to declare them invalid without just cause of complaint on his part. Sweeny v. Webb, 33 Texas Civ. App., 324; McLaury v. Watelsky, 39 Texas Civ. App., 394; Clark v. Finley, 93 Texas, 177.

Appellant further insists that the emergency clause of the Act of 1907 was insufficient to authorize its immediate passage, and hence that the Act did not go into effect until ninety days after the adjournment of the Legislature, and after the time of appellee Samuel's election and qualification. The emergency clause (sec. 163 of the Act) is as follows:

"Whereas, there has been a rapid growth in the population in the City of Fort Worth and its material development, so that the present charter of the City of Fort Worth is wholly insufficient and unsuited for the existing conditions in this city, and there is an immediate necessity for enlarged powers for the proper government of the said city; therefore there is an imperative public necessity and emergency requiring the suspension of the constitutional rule which provides that bills shall be read on three several days. It is, therefore hereby enacted that said rule shall be and is hereby suspended, and this Act shall take effect and be in force from and after its passage; subject, however to the result of the election hereinafter provided for."

Section 32, article 3 of the Constitution, declares that no bill shall have the force of law until it has been read on three several days in each house, but that in cases of imperative public necessity to be stated in the preamble or body of the bill, four-fifths of the house in which the bill may be pending may suspend the rule. Section 39 of the same article declares that no law passed by the Legislature, except the general appropriation Act, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted, unless otherwise directed in case of an emergency, which must be expressed in the preamble or body of the bill by a vote of two-thirds of all the members. It is not insisted that the Legislature failed to suspend the rules or pass the law by less than the constitutional number of votes, but the contention seems to be that while the emergency clause, which we have quoted, is sufficient to authorize a suspension of the rules, it is insufficient to authorize the law's immediate effect. It seems apparent to us, from a consideration of the emergency clause quoted, that not only did the Legislature hold that an emergency existed requiring a suspension of the rules, but also that such emergency required the law to take effect at once. The Legislature itself was the judge as to the necessity in each instance. The facts stated in the emergency clause seem to apply as well to both phases of the question. The "therefore" preceding the declaration of immediate enactment as certainly in our judgment has reference to the facts recited by the Legislature as constituting the emergency as the "therefore" in the emergency clause relating to a suspension of the rules. As a whole we think it reasonably clear that it was the legislative intent that the emergency declared by them should operate to both authorize a suspension of the rules and to make the law immediately effective. See Jameson v. State, 32 Texas Crim. Rep., 385.

Appellant's further and final contention is that the special Act of 1907 has never been put legally into effect, in that the question to be submitted to the people of the city was not submitted on the official ballot in accordance with the Terrell Election Law, and in that it was submitted at a general municipal election upon a separate ballot. Section 164 of the charter, hereinbefore quoted, declared the time and purpose of the election and that the city council should direct the printing

of the ballots to be used in the election, and that these ballots should contain the words "For the New Charter" and "Against the New Charter." The agreed statement of facts shows that within the time prescribed by the Act notice of the charter election was called and published in two daily newspapers in the city of Fort Worth for a full twenty days before the election, and that the matter was generally discussed by all the newspapers, and in public meetings as well; that at the election there were cast two thousand one hundred and seventy-seven votes for the adoption of the charter and four hundred and five votes against it. The ballot, the form of which is hereinbefore set out, contained all that was specifically required, and in our view the undisputed facts show at least a substantial compliance with the special law authorizing the special election involved in this controversy, and that, therefore, it is not subject to attack, at least in this proceeding. The Terrell Election Law by its own terms does not apply when it is otherwise provided, and we think the special law in question, as the latest expression of the legislative will, should govern. See Walker v. Mobley, 101 Texas, 28; Hash v. Ely, 45 Texas Civ. App., 259; Durham, County Judge, v. Rogers, 48 Texas Civ. App., 232, and authorities therein cited. In addition to which it may be added that the validity of the charter and election under consideration has never been questioned in any suit at the instance of the State, or in any direct proceeding by any person, and there is no contention of fraud in the election. It would therefore seem to be going very far to say upon a collateral attack, such as we conceive this to be, that the charter and election should be annulled for some mere irregularity in depositing the ballot which so clearly expressed the will of the people. See Kulp v. Railey, 99 Texas, 310; Fowler v. State, 68 Texas, 30; Snyder v. Baird Independent School District, 102 Texas, 4.

We conclude that all assignments of error should be overruled and that the judgment below should be in all things affirmed.

*Affirmed.*

Writ of error refused.