PEOPLE *v.* URCAVITCH.

1. CONSTITUTIONAL LAW—STATUTES—MANDATORY CONSTITUTIONAL PROVISIONS—INTOXICATING LIQUORS.

In a prosecution for the illegal possession of intoxicating liquors in violation of Act No. 53, Pub. Acts 1919, amending Act No. 338, Pub. Acts 1917, defendant's contention that said act is unconstitutional because it makes no provision for a person to possess, import, or transport intoxicating liquors for medicinal purposes, as required by section 11, Art. 16, Constitution of Michigan, *held*, not tenable, since the provisions of sections 9, 11, and 19 open the way to one who is in need of intoxicating liquors for medicinal purposes to obtain the same.

2. SAME—STATUTES—IMMEDIATE EFFECT—JUDICIAL REVIEW.

The question as to whether the legislature is within its rights in giving immediate effect to a statute, limited by

the State Constitution (Art. 5, § 21) to appropriations and to the preservation of the public peace, health or safety, is reviewable by the courts.

3. SAME—LEGISLATIVE DISCRETION—ABUSE.

Before declaring a statute inoperative because given immediate effect it should clearly appear that the legislature has abused its prerogative in this respect.

4. SAME—INTOXICATING LIQUORS—STATUTES—JUDICIAL NOTICE.

The court will take judicial notice of the fact that the "Wiley Act" (Act No. 338, Pub. Acts 1917), prohibiting the manufacture and sale of intoxicating liquors within the State, had only recently gone into effect when amended by Act No. 53, Pub. Acts 1919, presumably to correct some defect in the provisions provided for its enforcement.

5. SAME — INTOXICATING LIQUORS — REGULATION — PROHIBITION — STATUTES—JUDICIAL NOTICE.

The court will also take judicial notice of the fact that in passing from a State policy of regulation of the liquor traffic to one of prohibition, much legislation would be necessary to provide for its enforcement.

6. SAME—STATUTES—IMMEDIATE EFFECT—EVIDENCE— SUFFICIENCY —LEGISLATIVE DISCRETION.

The showing on this record *held*, insufficient to warrant this court in holding that under the necessities of the situation, the legislature was not justified in giving immediate effect to Act No. 53, Pub. Acts 1919, amending the "Wiley Act."

Exceptions before judgment from Berrien; White (Charles E.), J.   Submitted April 16, 1920.   (Docket No. 117.)   Decided June 7, 1920.

John Urcavitch was convicted of violating the liquor law.   Affirmed.

*O'Hara & O'Hara*, for appellant.

*John J. Sterling*, Prosecuting Attorney, for the people.

BIRD, J.   While defendant was *en route* from Chicago to his home in Grand Rapids he was arrested and taken from the train at Niles, Berrien county, for having imported into Berrien county, and having in his possession, five gallons of whisky.

Upon the trial defendant testified he was a molder by trade. That the dust incident to that business had affected his lungs and chest. That he consulted a physician, who advised him to take daily an admixture of whisky and hot butter or lard as a remedy therefor. Acting upon this advice he went to the city of Chicago and purchased five gallons of whisky and started home with it, but was intercepted and arrested while passing through Berrien county. He testified that he purchased it and had it in his possession for medicinal purposes. The trial court advised the jury that defendant's testimony, which was uncontradicted, was no defense to the charge in the information. Conviction followed and the proceedings are here for review on exceptions before sentence.

Defendant's counsel raises two constitutional questions:

(*a*) That the amendment (Act No. 53, Pub. Acts 1919) to the Wiley law (Act No. 338, Pub. Acts 1917), is unconstitutional, because it makes no provision for a person to possess, import or transport intoxicating liquors for medicinal purposes.

(*b*) Because the amendment was given immediate effect.

*a.* The section of the Constitution upon which counsel relies is section 11 of article 16. It reads:

"The manufacture, sale, keeping for sale, giving away, bartering or furnishing of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, except for medicinal, mechanical, chemical, scientific or sacramental purposes, shall be, after April thirty, nineteen hundred eighteen, prohibited in the State for-

210—Mich.—28.

ever. *The legislature shall, by law, provide regulations for the sale of such liquors for medicinal, mechanical, chemical, scientific and sacramental purposes."*

It is argued by counsel that if the legislature exercised its prerogative under this section to pass a prohibitory law it was its duty to make provision therein for the sale of intoxicating liquor for medicinal, mechanical, chemical, scientific and sacramental purposes. It is claimed that this was not done by the legislature, and that as a result of the passage of Act No. 53, of the Public Acts of 1919, no one has a right to possess intoxicating liquors even though he has made a lawful purchase of the same from a druggist.

We might be inclined to agree with counsel that the Wiley law, as amended, was unconstitutional if it can be said that the legislature failed to observe therein this constitutional mandate but such decision is not necessary. It is true that section 2 of the act makes it unlawful for one to be in possession of intoxicating liquors, but section 9 provides that the inhibition shall not be construed,—

"to prevent the sale and keeping and storing for sale by druggists * * * of intoxicating liquors for medicinal, mechanical, chemical or sacramental purposes, or of wine for sacramental purposes by religious bodies."

Section 11 provides that druggists may sell intoxicating liquors for the excepted purposes, and section 19 provides that physicians may prescribe intoxicating liquors for medicinal purposes.

We are of the opinion that these provisions open the way to one who is in need of intoxicating liquors for medicinal purposes to obtain the same. Of course, it may be said that the acquisition of it is preceded by much "red tape," but as the legislature has made it possible to secure it, the mere fact that it is hedged

about with many safeguards would not result in making the law unconstitutional.

Had the physician who prescribed the remedy of whisky and hot butter or lard for defendant's malady given him a prescription therefor, he could have obtained the whisky from any qualified druggist in the city of Grand Rapids, and in this way he could have secured possession of it lawfully. But it is argued that after he obtains it in this way he could be apprehended by the public authorities for having possession of it. We do not think this is a reasonable construction of the act. When the Constitution commands the legislature to make provision for the sale of intoxicating liquors for medicinal purposes, and it does so, it would be going outside of the realm of reason to say that one who becomes the purchaser of liquor in compliance with these provisions was, the moment he got possession thereof, guilty of violating the act. *People* v. *Harris*, 202 Mich. 622. It is quite evident, too, that the legislature contemplated that one might be in the lawful possession of intoxicating liquors as is evinced by the following section:

"It shall be unlawful for any person to import, ship, sell, transport, deliver, receive or have in his possession any intoxicating liquors *except as in this act provided.*" Act No. 53, Pub. Acts 1919, § 57

Our conclusion is that the act is not unconstitutional for this reason.

*b.* Was the legislature within its rights in giving the amendment immediate effect? We held in *Attorney General* v. *Lindsay,* 178 Mich. 524, that this question was reviewable by the courts. We are of the opinion, however, that before declaring a law inoperative for this reason it should clearly appear that the legislature has abused its prerogative in this respect. The court will take notice of the fact that the act prohibiting the manufacture and sale of intoxicating

liquors within the State had only recently gone into effect when this amendment was added to the Wiley law, presumably to correct some defect in the provisions provided for the enforcement thereof. We may also take notice that in passing from a State policy of regulation of the liquor traffic to one of prohibition, much legislation would be necessary to provide for its enforcement. The necessities of the situation which prompted the passage of the amendment were doubtless then before the legislature, and we do not feel that the showing on this record would warrant us in holding that the situation of affairs at that time did not justify giving it immediate effect.

Finding no error in the record the judgment of conviction will be affirmed. The court will proceed to sentence.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. CLARK and SHARPE, JJ., did not sit.