[Civ. No. 4716. Third Appellate District.—February 2, 1933.]

J. JAMES HOLLISTER, Jr., Respondent, v. W. S. KINGS-BURY, Surveyor-General, etc., Appellant.

U. S. Webb, Attorney-General, and Jess Hession and W. R. Augustine, Deputies Attorney-General, for Appellant.

James G. Leovy and William Hazlett for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment of the Superior Court of Sacramento County directing a writ of *mandamus* to issue requiring the appellant to file the petitioner's application for a permit to prospect for oil and gas in state lands pursuant to Statutes of California of 1921, chapter 303, page 404. The question which is here involved is whether an urgency amendment to section

4 of that statute, which was adopted by the legislature in 1929 (Stats. 1929, chap. 7, p. 11; 2 Deering's Gen. Laws, p. 3456, Act 6341), withdrawing certain state lands from exploration for oil and gas by private littoral owners, is in conflict with the provisions of article IV, section 1, of the Constitution of California for failure to state therein the facts warranting such emergency legislation.

The Mineral Land Act of 1921 authorized the Surveyor-General to permit prospecting for oil and gas on certain state lands upon specified terms, by private littoral owners. In 1929 section 4 of this act was amended as an urgency measure, with the proviso: "That no permit to prospect or drill for oil or gas in or upon any tide, overflowed or submerged lands shall ever be granted by the surveyor general upon an application made between the date of approval of this act and the first day of September, 1929."

This amendatory act was approved January 17, 1929, to take effect immediately. In compliance with the provisions of article IV, section 1, of the Constitution, this emergency act stated the essential facts constituting the necessity therefor. This constitutional provision with which the petitioner contends the legislature failed to adequately comply declares that "No act passed by the legislature shall go into effect until ninety days after the final adjournment of the session of the legislature which passed such act, except . . . urgency measures necessary for the immediate preservation of the public peace, health or safety, . . . Whenever it is deemed necessary for the immediate preservation of the public peace, health or safety that a law shall go into immediate effect, a statement of the facts constituting such necessity shall be set forth in one section of the act, . . . Any law so passed by the legislature and declared to be an urgency measure shall go into immediate effect."

Pursuant to the foregoing constitutional provision the emergency act declared the necessity and recited the reasons therefor, as follows:

"Sec. 3. This act is hereby declared to be an urgency measure deemed necessary for the immediate preservation of the public peace, health and safety within the meaning of section 1 of article four of the constitution of California, and as such it shall take effect immediately.

"The following is a statement of the facts constituting such urgency and necessity:

"The surveyor general, since some time in 1927, has refused to file any applications for, or to grant any permits on the tide or submerged lands of the state, and it is believed that but for such refusal a much greater area of tide and submerged lands would have been applied for. There was, during 1927, commenced in the supreme court of the state, one or more actions which involved the validity of the act hereby amended, in so far as the same related to tide and submerged lands, and the decision of the supreme court in these cases was rendered on the thirty-first day of December, 1928, and in such decision the supreme court held such act to be valid in the particulars in which its validity had been challenged. Since such decision was rendered, the surveyor general has received numerous inquiries in regard to the procedure to be followed in order to obtain permits for tide and submerged lands under the provisions of said act and it is believed that a large number of applications for such lands will soon be made. It is believed that the tide and submerged lands of the state should not be open for exploitation and prospecting or for the production of oil and gas, as provided by the act hereby amended.

"The Legislature desires opportunity to consider to what extent, if at all, the provisions tendered by the act hereby amended should be limited or withdrawn, and it is deemed in the interests of public policy that no rights under the act hereby amended should be initiated during the time given by the Legislature to the consideration of the subject, nor until such legislation as may be adopted in furtherance of the legislative purpose shall go into effect. If such provisions be not suspended during the period indicated the tide and submerged lands may be so far covered by applications and leases that such legislation as may be adopted would fail to secure that protection of tide and submerged lands which was by the Legislature intended."

April 17, 1929, the petitioner posted notices of his application to prospect for oil and gas in accordance with the provisions of the statute. Within thirty days thereafter, on May 16, 1929, due application for authorization to explore the land for oil and gas, in strict compliance with the stat-

ute, was made to the Surveyor-General of the State of California, who refused to file the same on the ground that it was in conflict with the prohibition of the emergency act above referred to, since such applications were specifically forbidden prior to September 1, 1929.

■ Urgency measures may be adopted by the legislature when they are necessary "for the immediate preservation of the public peace, health or safety". For the securing of public safety, the legislature may adopt emergency measures to protect the use and enjoyment of property as well as to provide against injury to persons. (*Industrial Bank, etc.,* v. *Reichert,* 251 Mich. 396 [232 N. W. 235]; *Attorney-General* v. *Lindsay,* 178 Mich. 524 [145 N. W. 98]; *Simpson* v. *Weinegar,* 122 Or. 297 [258 Pac. 562]; Webster's New International Dictionary 1867; 6 Century Dict. Encyc. 5300.) In the authority last cited the term "safety" is defined as "Immunity from harm or danger; preservation or freedom from injury, *loss* or hurt." It requires no distortion of the usual meaning of the term "safety" to hold that it includes freedom of property from burglary or fire or from an unsightly forest of oil-well derricks or obnoxious fumes from overflowing crude oil, or the loss of any other natural property value.

In the case of *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* 257 Mich. 655 [242 N. W. 227, 229], which involved an emergency act affecting property rights under a trust mortgage, the court said: "It is further contended that the act should not have been given immediate effect. In *Industrial Bank* v. *Reichert,* 251 Mich. 396 [232 N. W. 235], we upheld powers of the legislature to give immediate effect to a law affecting the public safety *by protection of property.* See, also, *Naudzius* v. *Lahr,* 253 Mich. 216 [71 A. L. R. 1189, 234 N. W. 581.]"

It is strenuously contended by the respondent in the present proceeding that the emergency act is invalid for the reason that the statement of facts therein contained fails to show that the legislation was of an urgent nature, or that it was necessary for the immediate preservation of public peace, health or safety.

We are of the opinion the emergency act is valid as such. ■ By the terms of article IV, section 1, of the Constitution, exclusive authority is conferred upon the legislature

to determine when urgency measures are necessary for the immediate preservation of the public peace, health or safety. When the necessity has been determined as provided by the Constitution, the judgment of the legislature is final and conclusive, and may not be interfered with by the courts unless no declaration of facts upon which the emergency is deemed to be founded is included in the act, or unless the statement of facts is so clearly insufficient as to leave no reasonable doubt that the urgency does not exist. It is an unwarranted violation of the Constitution and interference with the legislative prerogative for a court to substitute its judgment of what is deemed to constitute public necessity for urgency measures for that of the legislature, unless it clearly and affirmatively appears that the emergency does not exist. Every reasonable intendment should support the validity of urgency measures of the legislature which are adopted pursuant to the constitutional provisions therefor.

Our Supreme Court has said in the case of *In re McDermott,* 180 Cal. 783 [183 Pac. 437], that the determination of the existence of public necessity for the enactment of an emergency measure rests upon the "judgment of the legislature". In several states where Constitutions exist which authorize the legislatures to enact emergency laws upon determining a public necessity therefor to preserve public peace, health or safety, and directing the urgency therefor to be expressed in the act, it has been held that the necessity for such laws is purely a legislative question, the determination of which will not be interfered with by the courts. *(Kadderly* v. *Portland,* 44 Or. 118 [74 Pac. 710, 75 Pac. 222]; *Roy* v. *Beveridge,* 125 Or. 92 [266 Pac. 230]; *Orrick* v. *Fort Worth,* 52 Tex. Civ. App. 308 [114 S. W. 677]; *Roanoke* v. *Elliott,* 123 Va. 393 [96 S. E. 819]; *Gentile* v. *State,* 29 Ind. 409; *In re Menefee,* 22 Okl. 365 [97 Pac. 1014]; *Brown* v. *State,* 3 Okl. Cr. 475 [106 Pac. 975]; *Arkansas Tax Com.* v. *Moore,* 103 Ark. 48 [145 S. W. 199]; *Hanson* v. *Hodges,* 109 Ark. 479 [160 S. W. 392]; *Van Kleek* v. *Ramer,* 62 Colo. 4 [156 Pac. 1108]; *Diaz Cintron* v. *People,* 24 Fed. (2d) 957; 1 Lewis' Sutherland's Stat. Const., 2d ed., 314.)

In the authority last cited it is said: "What may be deemed an emergency for this purpose [of determining necessity for urgency measures] is purely a legislative ques-

tion. The courts will not inquire into it, nor entertain any question of its sufficiency.''

Article III, section 1, of the California Constitution provides: ''The powers of the government of the State of California shall be divided into three separate departments—the legislative, executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted.''

It will be observed the Constitution of California, by inference, invests the legislature with exclusive power to determine the necessity for emergency laws. It reads: ''Whenever it is deemed [by the legislature] necessary for the immediate preservation of the public peace, health or safety that a law shall go into immediate effect, a statement of the facts constituting such necessity shall be set forth in one section of the act.''

Construing the Oregon Constitution, which is similar to that of our own with respect to emergency acts, with the exception of requiring the recitation of facts upon which the necessity rests, the court said in the case of *Kadderly* v. *Portland, supra,* at page 118 [72 Pac. 721]: ''The existence of such necessity [for emergency acts] is therefore a question of fact, and the authority to determine such fact must rest somewhere. The Constitution does not confer it upon any tribunal. It must, therefore, necessarily reside with that department of the government which is called upon to exercise the power. It is a question of which the legislature alone must be the judge, and, when it decides the fact to exist, its action is final.''

Under the California Constitution it is the sole prerogative of the legislature to determine the necessity for emergency legislation, which may not be disturbed by a court, except, that since our Constitution requires the statement of the facts constituting the necessity to be recited in the act, it follows that if these facts clearly show that a public necessity does not exist, then the declaration of the necessity falls of its own weight. Unless the absence does so clearly appear from the facts recited in the act, then the determination of the legislature is final. A number of cases hold that unless the absence of necessity affirma-

tively appears in the act, the courts must accept the legislature's finding of necessity as conclusive. In the case of *Newberry* v. *Starr et al.,* 247 Mich. 404 [225 N. W. 885, 887], involving an emergency act consolidating school districts, the court said: "I do not think it can be said with certainty that the act in question was not immediately necessary for the preservation of the public peace, health and safety, and the courts should interfere only where that conclusion is inevitable."

In the case of *Naudzius* v. *Lahr,* 253 Mich. 216 [234 N. W. 581, 74 A. L. R. 1189] involving emergency legislation affecting the operation of automobiles, the court said: "It is not the province of the court to attempt to accurately ascertain and adjudicate the immediate necessity of the terms of the particular act, but, if the subject of the law has a real and substantial relation to public peace, health, or safety, all doubt will be resolved in favor of the legislative judgment that it is 'immediately necessary'. (*Attorney-General* v. *Lindsay,* 178 Mich. 524 [145 N. W. 98]; *People* v. *Urcavitch,* 210 Mich. 431 [178 N. W. 224]; *People* v. *Stambosva,* 210 Mich. 436 [178 N. W. 226]; *Newberry* v. *Starr,* 247 Mich. 407 [225 N. W. 885].)"

■ Far from affirmatively appearing from the statement of facts in the challenged legislative act that the immediate necessity for the urgency measure does not exist, we think a reasonable construction of what the legislature did recite, construed in the light of the general effect of operations for the discovery and pumping of oil, of which the courts may take judicial cognizance, prompts the conclusion that the legislature was justified in determining there was urgent necessity for the amendment to the Mineral Land Act of California. In the case of *In re McDermott,* 180 Cal. 783 [183 Pac. 437] regarding a similar meager statement of facts in an emergency act affecting syndicalism, as follows, "at the present time large numbers of persons are going from place to place in this state advocating, teaching and practicing criminal syndicalism", the court well said: "We think this to be a sufficient compliance with the provisions of section 1 of article IV of the Constitution requiring a statement 'in one section of the act' of the facts making it necessary in the judgment of the legislature that a law shall go into immediate effect, where the legis-

lature considers that this is necessary 'for the immediate preservation of the public peace, health or safety'. The courts may not say that this conclusion of the legislature was not justified."

In a separate section of the emergency act which is involved in the present proceeding, the legislature made the following affirmative declaration: "This act is hereby declared to be an urgency measure deemed necessary for the immediate preservation of the public peace, health and safety."

Following the foregoing affirmative determination of a public necessity for immediate legislation, the act contains, in part, the following statement of facts, upon which the legislative conclusions rest: "The surveyor general, since some time in 1927, has refused to file any applications for, or to grant any permits on the tide or submerged lands of the state, and it is believed that but for such refusal a much greater area of tide and submerged lands would have been applied for."

This is a declaration that the legislature feared large numbers of applicants would seek to file upon state tide and submerged lands to exploit the public domain in drilling for oil and gas, except for the refusal to register applications by the Surveyor-General.

. The statement then relates the fact that certain litigation was prosecuted involving the constitutionality of this Mineral Land Act, and tells of the final sustaining of the validity of the act. Then the statement continues: "Since such decision was rendered, the surveyor general has received numerous inquiries in regard to the procedure to be followed in order to obtain permits for tide and submerged lands under the provisions of said act and it is believed that a large number of applications for such lands will soon be made."

This is a clear statement that from numerous inquiries for information it is believed the Surveyor-General may be overwhelmed with petitions of private parties for authority to exploit the public lands for oil and gas. The legislature then concludes: "It is believed that the tide and submerged lands of the state should not be open for exploitation and prospecting or for the production of oil and gas, as provided by the act hereby amended."

The legislature does not say why "it is believed" the state lands should not be "open to exploitation" for oil and gas by private parties. Such a declaration is unnecessary. Certainly the legislature has a right to assume that it is wise and profitable to preserve the valuable minerals of the public domain for the benefit of the state. It may be reasonably assumed it would be profligate for the legislature to abandon valuable mineral resources of the state to the exploitation of private interests. Much criticism has been directed toward public officers in the past for recklessly abandoning natural resources of the public domain to the exploitation of private interests. Moreover, we may assume the legislature is warranted in preserving the scenic beauty of state coast lands, beaches and waterfronts against the unsightly results similar to Signal Hill of great activity in drilling for oil. The picturesqueness of our California coasts, the desirability of unobstructed beaches for recreation and beauty and a clear waterfront for boating and fishing, are property rights the legislature is justified in considering in the preservation of state lands for public welfare.

In this statement of facts the legislature further declares the provisions of the original Mineral Land Act should be held in abeyance until a more critical examination of the situation may be made. It is laudable that the resources and natural condition of state lands should be preserved, at least until further investigation may be made. It is not an admission that an emergency does not exist. After first declaring that an emergency does exist, it is said, in effect, "in addition to the foregoing exigency, we desire further opportunity for investigation". If the exploitation of public lands by private interests be detrimental, as the legislature asserts that it is, then it would be folly to delay the restraining of such prospecting and the acquiring of vested rights which might not be thereafter revoked, until the detriment could be proved beyond a reasonable doubt. That procedure would be an absurdity. It would result in "locking the barn" when it was too late.

Finally the legislature declares in its statement: "If such provisions be not suspended during the period indicated the tide and submerged lands may be so far covered by applications and leases that such legislation as may be adopted

would fail to secure that protection of tide and submerged lands which was by the Legislature intended."

In the language of the Supreme Court which was employed in the decision of the McDermott case, *supra*, "We think this to be a sufficient compliance with the provisions of section 1 of article IV of the Constitution. . . . The courts may not say that this conclusion of the legislature was not justified."

The judgment is reversed and the trial court is directed to discharge the writ of *mandamus*.

Pullen, P. J., and Plummer, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 3, 1933.

Seawell, J., dissented.