[L. A. No. 16657.   In Bank.—December 1, 1938.]

ELIZABETH A. DAVIS, Appellant, v. COUNTY OF LOS ANGELES (a Public Corporation) et al., Respondents.

414

Roy A. Linn for Appellant.

J. H. O'Connor, County Counsel, W. B. McKesson, Deputy County Counsel, Tanner, Odell & Taft and Ray C. Eberhard for Respondents.

Earl Warren, District Attorney, Alameda County, Ralph E. Hoyt, Chief Assistant District Attorney, and Agnes R. Polsdorfer, T. A. Westphal, Jr., and Lynn J. Gillard, Deputies District Attorney, as *Amici Curiae*, on Behalf of Respondents.

SHENK, J.—By this action for an injunction and declaratory relief the plaintiff sought to test the validity of the emergency clause of Statutes of 1937, page 153. That act repealed the act of 1929 (Stats. 1929, p. 357), which provided for the payment of retirement compensation to teachers and other employees. The act of 1929 was declared unconstitutional in *Los Angeles City School Dist.* v. *Griffin*, 3 Cal. (2d) 651 [46 Pac. (2d) 141].

The 1937 enactment presented a different plan or method for adopting a pension and retirement system in the school districts throughout the state. Section 5.1100 thereby added to the School Code, provides that in any school district in which the employees are not entitled to the benefits of a pension or retirement system maintained by a city, city and county, or county, the governing board of the district shall have power in its discretion to submit, and upon a petition duly signed and filed as prescribed it must submit, to the qualified electors of the district "the proposition of establishing a plan for a district retirement salary under the provisions of this article", to be paid to teachers and such other employees as the board may determine.

By section 5.1101 "the proposition of establishing such plan may be submitted to the electors of the district at any general or special election", also authorizing the governing bodies to call and hold elections for such purpose. The same section permits the consolidation of elections where "the governing board calling such an election is the governing board of more than one school district and calls elections in two or more districts to submit to the electors of the respective districts, on the same day, in the same territory, or in territory which is in part the same, the question whether a district re-

tirement plan shall be established in such respective districts''. Other particulars are specified including requirements for posting and publishing notice of the election. The form of ballot is prescribed. A majority vote favorable to the proposition bestows upon the board the power and imposes upon it the duty of establishing a district retirement salary for teachers and employees.

Section 5.1102 designates the teachers and employees who shall be bound by the burdens and benefits of the plan.

Before formulating the plan the board must, pursuant to section 5.1103, and after inquiry and hearing, find rates of contribution which are substantially in accordance with the more recent generally prevailing rates of such contributions in established retirement systems of public institutions, and determine that such plan is in accordance with sound business practice and recognized actuarial methods. This section establishes minimum and maximum retirement salary payments. It also requires the levy and collection of district taxes to provide funds for the retirement payments.

Section 5.1104 specifies the period of service and minimum age limits of a beneficiary of the system, with certain exceptions in cases of disability. Section 5.1105 provides for a ''retired list''. Section 5.1106 gives to the governing boards general rule-making power in aid of the provisions of the act. A ''District Retirement Fund'' is defined by section 5.1107, a record of which is required to be kept upon the books of the auditor and county treasurer. It includes contributions received from teachers and employees and moneys from all other sources properly allocable to the fund. By the same section members of governing boards are charged with the performance of such duties and responsibilities without additional compensation. Also serving without compensation is a district retirement board (section 5.1108) composed of not less than three nor more than seven members, upon which the governing board, the teachers and other employees in the district shall be represented, to be selected by them by secret ballot, and of which the county treasurer shall be *ex officio* a member. Section 5.1109 places in the charge and control of the district retirement board, the district retirement fund and the payment of all retirement salaries and annuities. This board is also charged with the investment

and management of the fund. The attorney for the governing board of the district is directed to act as attorney for the district retirement board without additional compensation. Securities purchased are to be deposited with the county treasurer for safekeeping. The same section provides that the duties reposed by the act in "the county treasurer shall be deemed a part of his official duties, for the faithful performance of which he shall be liable upon his official bond". The county auditor is required to audit the accounts of the district retirement board at least once a year and report upon the financial condition thereof to the governing board of the district.

Sections 5.1110 and 5.1111 indicate that the plan is not intended to displace retirement salaries otherwise provided by law but is in addition thereto.

In a separate section of the act the legislature declared the immediate effect of the act as an urgency measure necessary for the preservation of the public peace, health and safety. The section also contains a statement of the facts deemed to constitute the necessity.

The act was approved by the Governor on April 22, 1937. Immediately following its approval the board of education of the city of Los Angeles, as the governing board of the city elementary school district, the city high school district, and the city junior college district, voted to call an election to be held on May 4, 1937, for the purpose of submitting to the electors of those districts the proposition of establishing a retirement plan as authorized by the act. The board thereby also voted to consolidate the election for such purpose with a general municipal election theretofore called for the same day. Notice of the call was given as prescribed. At the elections the proposition was submitted to the voters in the three districts, and passed by a large majority vote.

On August 5, 1937, the board adopted rules and regulations for a retirement plan pursuant to the act and subsequently filed with the superintendent of schools its retirement budget requirements, including $451,490 for the elementary school district, $510,380 for the high school district, and $19,630 for the junior college district, a total of $981,500. On September 1, 1937, the board of supervisors accordingly set the appropriate tax rate for each of said districts and

levied the same upon the taxable property in the respective districts.

·A petition that the act be referred to a vote of the people of the state was not filed.

The plaintiff herein, owner of property in the three districts, sought a declaration of the invalidity of the proceedings purporting to levy the tax to raise retirement funds pursuant to the act and the plan. The trial court found favorably as to the validity and constitutionality of the act and the emergency clause giving it immediate effect; further that any irregularity in the call and conduct of the election of May 4th did not affect the result. The plaintiff appealed from the judgment entered pursuant to those findings.

The plaintiff attacks the validity of the urgency clause and contends that in any event the act did .not become effective on April 22, 1937; and consequently that the election of May 4, 1937, was a nullity.

Section 1 of article IV of the state Constitution vests legislative power in the senate and assembly, but reserves to the people the powers of the initiative and referendum. An act passed by the legislature does not become effective until 90 days after the final adjournment of the legislative session at which the act was passed. Exceptions are acts calling elections, acts providing for tax levies or appropriations for the usual current expenses of the state, and urgency measures necessary for the immediate preservation of the public peace, health or safety, passed by a two-thirds vote of all members elected to each house. The Constitution provides: "Whenever it is deemed necessary for the immediate preservation of the public peace, health or safety that a law shall go into immediate effect, a statement of the facts constituting such necessity shall be set forth in one section of the act, which section shall be passed only upon a yea and nay vote, upon a separate roll call thereon; provided, however, that no measure creating or abolishing any office or changing the salary, term or duties of any officer, or granting any franchise or special privilege, or creating any vested right or interest, shall be construed to be an urgency measure. Any law so passed by the legislature and declared to be an urgency measure shall go into immediate effect."

■ Section 3 of the act here in question contains the following statement of facts deemed by the legislature to constitute the necessity: "The School Code was amended by the Legislature at its 1935 session to permit governing boards of school districts to discharge teachers who have reached the age of sixty-five years, which amendment will become effective September 1, 1937. Many boards of education desire to take advantage of the provisions of said amendment, and to avoid the hardships which will follow the discharge of many teachers aged sixty-five years or more and to avoid the possibility of placing such teachers and their families and dependents on relief rolls of their respective counties, such boards desire to establish district retirement plans for their employees, as authorized herein. This act requires that the establishment of such plan be submitted to the vote of the people of the school district, and many municipal and school district elections are to be held during the months of April and May, 1937, at which such propositions can be submitted to the voters of the respective districts, at a large saving to the taxpayers of the respective districts."

The plaintiff contends that the foregoing statement does not show any necessity for the preservation of the public peace, health or safety, and for that reason the urgency declaration was ineffective as such.

It is urged by the defendants that a sufficient answer to all of the grounds of the plaintiff's opposition to the effectiveness of the legislation as an urgency measure is that the act is not self-executing but is rather an enabling act and requires an election to be called and held in the district to be affected thereby before the powers to be exercised thereunder are vested in the appropriate body. The argument that the urgency clause of the act, if effective, cuts off unwarrantedly the power to exercise the referendum loses much of its power for the reason that the voters still must register their assent to be bound by the act. But we need not rest our conclusion that the act was effective urgency legislation upon that observation.

■ It is apparent that there is a conflict in the authorities on the question whether a legislative declaration of urgency is binding on the courts. It has been held by some courts, and probably by the weight of authority, that the

declaration of the existence of the emergency or necessity is exclusively within the exercise of the legislative function, and if the prescribed procedure has been followed the law is immediately effective and the declaration is not subject to review in the courts. (*Kadderly* v. *City of Portland,* 44 Or. 118 [74 Pac. 710, 75 Pac. 222]; *City of Roanoke* v. *Elliott,* 123 Va. 393 [96 S. E. 819]; *Orrick* v. *City of Ft. Worth,* 52 Tex. Civ. App. 308 [114 S. W. 677]; *Joplin* v. *Ten Brook,* 124 Or. 36 [263 Pac. 893, 894]; *Simpson* v. *Winegar,* 122 Or. 297 [258 Pac. 562]; *State* v. *Kennedy,* 132 Ohio St. 510 [9 N. E. (2d) 278, 110 A. L. R. 1428]; *Hill* v. *Taylor,* 264 Ky. 708 [95 S. W. (2d) 566]; *Hutchens* v. *Jackson,* 37 N. M. 325 [23 Pac. (2d) 355].) The basis for the foregoing conclusion is that the law makers in the process of enacting laws must pass upon all questions of expediency, necessity and fact connected therewith (see, also, *Stevenson* v. *Colgan,* 91 Cal. 649 [27 Pac. 1089, 25 Am. St. Rep. 230, 14 L. R. A. 459]), ''and must, therefore, determine whether a given law is necessary for the preservation of the public peace, health and safety. It has always been the rule, and is now everywhere understood, that the judgment of the legislative and executive departments as to the wisdom, expediency or necessity of any given law is conclusive on the courts and cannot be reviewed or called in question by them. It is the duty of the courts, after a law has been enacted, to determine in a proper proceeding whether it conflicts with the fundamental law, and to construe and interpret it so as to ascertain the rights of the parties litigant. The powers of the courts do not extend to the mere question of expediency or necessity, but, as said by Mr. Justice Brewer, 'they are wrought out and fought out in the legislature and before the people. Here the single question is one of power. We make no laws. We change no constitutions. We inaugurate no policy. When the legislature enacts a law, the only question which we can decide is whether the limitations of the Constitution have been infringed upon'. (Prohibitory Am. Cas., 24 Kan. 700, 706.) The amendment excepts such laws as may be necessary for a certain purpose. The existence of such necessity is therefore a question of fact, and the authority to determine such fact must rest somewhere. The Constitution does not confer it upon any tribunal. It must therefore necessarily reside with

that department of the government which is called upon to exercise the power. It is a question of which the legislature alone must be the judge, and, when it decides the fact to exist, its action is final . . . (citing cases)." (*Kadderly* v. *City of Portland, supra.*)

The view opposed to the foregoing, expressed in the case of *State* v. *Meath,* 84 Wash. 302, 304 [147 Pac. 11] (see, also, *State* v. *Hinkle,* 116 Wash. 1 [198 Pac. 535] ; *State* v. *Hutchinson,* 173 Wash. 72 [21 Pac. (2d) 514] ; *State* v. *Martin,* 173 Wash. 249 [23 Pac. (2d) 1, 4] ), leans toward a policy which would accord the greatest effectiveness to the exercise of the right of referendum. (For further discussion and citation of cases see *Hutchens* v. *Jackson, supra,* and note, 7 A. L. R. 519 et seq.)

It is unnecessary to enter upon a further analysis of the cases in other jurisdictions supporting the divergent views. In this state in *Stevenson* v. *Colgan, supra,* at page 652, it was said: "The authority and duty to ascertain the facts which ought to control legislative action are, from the necessity of the case, devolved by the Constitution upon those to whom it has given the power to legislate, and their decision that the facts exist is conclusive upon the court, in the absence of an explicit provision in the Constitution giving the judiciary the right to review such action." The reasoning of the case of *Kadderly* v. *City of Portland, supra,* as applied to statements of necessity in urgency measures, is reflected in the early decisions of this court. (*Franklin* v. *State Board of Examiners,* 23 Cal. 1; *People* v. *Pacheco,* 27 Cal. 175, 176, 221.) There is nothing to the contrary to be inferred from *In re Hoffman,* 155 Cal. 114 [99 Pac. 517, 132 Am. St. Rep. 75]. That case involved a purported urgency ordinance of the city of Los Angeles regulating the sale of milk and cream. As indicated in *Joplin* v. *Ten Brook,* 124 Or. 36 [263 Pac. 893, 895], restrictions may be imposed upon the power exercised by a city legislative body to declare the urgency nature of an ordinance which are not imposed by the Constitution upon the state legislature. In the same category as the Hoffman case are the cases of *Los Angeles G. & E. Corp.* v. *City of Los Angeles,* 163 Cal. 621, 629 [126 Pac. 594], and *Morgan* v. *City of Long Beach,* 57 Cal. App. 134 [207 Pac. 53].

■ Since the adoption by the people in 1911 of section 1, article IV of the Constitution, reserving the powers of the initiative and the referendum, the courts have nevertheless adhered to the fundamental philosophy that questions of fact, necessity and expediency are for the legislature. It has been felt that the requirement for a statement of the facts constituting the necessity in emergency legislation does not modify the principle nor bestow upon the judiciary power to declare the declaration invalid unless it ''appears clearly and affirmatively from the legislature's statement of facts that a public necessity does not exist''. (*Stockburger* v. *Jordan*, 10 Cal. (2d) 636 [76 Pac. (2d) 671], citing *Hollister* v. *Kingsbury*, 129 Cal. App. 420 [18 Pac. (2d) 1006], and *In re McDermott*, 180 Cal. 783 [183 Pac. 437].) Thus in the Stockburger case it was also said: ''The legislature having determined by the declaration contained in said act that the enactment of said statute was necessary for the immediate preservation of the public peace, health and safety, and the determination of the legislature of the existence of such necessity being conclusive upon the courts, we are precluded in these proceedings from further questioning the necessity for such legislation.''

■ There is no clear and affirmative showing on the face of the statement of facts included in the present act such as would justify this court in concluding that the legislative declaration of the existence of a public necessity was invalid. Certainly it is not for the court to say that, since the previous act of 1929 was declared unconstitutional, and since an act passed in 1935 (Stats. 1935, p. 1881) divested teachers attaining age of 65 of their permanent tenure from and after September 1, 1937, the acute situation indicated in the statement with respect to teachers expecting retirement has not arisen. That such a situation has or might have a direct bearing upon the public health, peace and safety, cannot be doubted. Nor may we conclude that an early vote by the electors on the proposition to authorize the establishment of a retirement plan would not serve an immediate necessity involving the public health, peace and safety in addition to affording the opportunity for public economy obtained by consolidating the elections provided for with general elections already called. ■ If there is any doubt as to whether the

facts do or do not state a case of immediate necessity, that doubt should be resolved in favor of the legislative declaration (*Naudzius* v. *Lahr*, 253 Mich. 216 [234 N. W. 581, 585 [74 A. L. R. 1189]) ; or, as it has otherwise been stated, "if fair-minded and intelligent men might reasonably differ as to the sufficiency and truth of the fact assigned for placing the act in effect immediately upon its passage, the courts are concluded by the finding" (*Jumper* v. *McCollum*, 179 Ark. 837 [18 S. W. (2d) 359, 361], and cases referred to) ; or, if the legislature "states facts constituting an emergency so that its action cannot be said to be arbitrary, courts cannot say that it has not performed its constitutional duty, even though they may disagree with the legislature as to the sufficiency of declared facts to constitute a sufficient reason for immediate action". (*Baker* v. *Hill*, 180 Ark. 387 [21 S. W. (2d) 867, 868].)

We are brought then to a consideration of the question whether the act creates any office or changes the salary or duties of any officer, or creates any vested right or interest so as to defeat the immediate effectiveness thereof.

The plaintiff contends that "additional burdens are placed upon" the school board, the county treasurer, county auditor, county school superintendent and the county counsel by the new provisions of the School Code; that the duties of the officers and boards are enlarged and increased by the provisions of the statute, and that section 5.1108 creates the offices of members of a district retirement board. A sufficient answer to these contentions would seem to be that until the election authorized by the act has resulted in favor of the adoption of the proposition to establish a retirement plan, none of the provisions of the act controls or governs in the district or districts. If the election is not held in any school district in the state, then the act would have no more effect upon the duties of officers or otherwise than if it had never been passed.

In support of her contention that the additional duties devolving upon the school board, the county treasurer, auditor, school superintendent and counsel effect a "change" in their respective duties, the plaintiff relies on the recent decision of this court in *Stockburger* v. *Jordan, supra*. That case involved the validity of the urgency declaration purporting to give immediate effect to chapter 304 of Statutes of 1937

(p. 665)', which related to the development, production, and disposition of oil, gas and other hydro-carbon substances from state-owned tide and submerged lands at Huntington Beach. The act purported to vest immediately in the director of finance the power and duty to secure the development, extraction, removal and sale of oil and gas, to acquire by condemnation or otherwise property necessary for government access to the lands, and if the oil lands be leased to others, to dispose of leases thereof for production purposes, or to obtain the immediate drilling thereof if bids for leases are not received. When, in that case, this court concluded that such a material and substantial addition to the duties of the director of finance was a "change" of duties within the meaning of the pertinent constitutional section, it was not intended that it should be inferred therefrom that every addition to the duties devolving upon public officers should be deemed to constitute a "change" of duties. The definition of "change of duties" adopted in that case was not intended to embrace such additional duties imposed by law the performance of which would naturally devolve upon the officer had no express mention thereof been made in the act, and as otherwise would be incidental to his office. · Obviously such was not the situation in the Stockburger case. The new and special character of the additional duties imposed upon the director of finance under the act involved in that case was entirely foreign to the duties theretofore devolving upon him by law.

Inasmuch as the provisions of the act or the code sections do not impose undue or material and substantial additional burdens or duties upon the officers mentioned, different in nature from those already required of them by law, we conclude that such provisions did not produce a "change" either in the salary or duties of those officers.

The act does not create any vested right or interest, if for no other reason than that claims to pension, whether inchoate or vested, cannot arise under its provisions until the electors vote to authorize the establishment of a plan, and the plan is accordingly formulated and put into effect. It is therefore not necessary at this time to determine the nature of that right.

The act is not special or "class" legislation, nor does it lack uniformity of operation. It is a general law appli-

cable throughout the state for the benefit of every school district whose electors vote to take advantage of its provisions.

The act does not delegate to boards of education legislative functions. Acting within its recognized powers, the legislature has provided for delegation to the boards of governors of only the administrative duties to establish the details of the plans for retirement pensions subject to the limitations and requirements prescribed by the act. That such plans must differ in each section of the state, in accordance with its needs, or even within different districts in the same section of the state, must be obvious. The legislature was acting within its proper function in delegating to the local governing boards the discretion to formulate the details of a retirement plan pertaining to such matters as determining what persons are within the class entitled to benefit under the law, what are the recent generally prevailing rates of contribution in public institutions and the rate to be adopted based thereon, and what are the sound business practices and actuarial methods and the introduction and application thereof in the plan to be adopted. The delegation by the legislature of the performance of such duties guided by the rules prescribed is not unlawful. (*Tarpey* v. *McClure*, 190 Cal. 593, 600 [213 Pac. 983]; *People* v. *Monterey Fish Products Co.*, 195 Cal. 548, 558 [234 Pac. 398, 38 A. L. R. 1186]; 5 Cal. Jur. 679, 681.)

Differences which may result from methods of administration depending upon differences for instance in population, do not create any unlawful discrimination. (*Grigsby* v. *King*, 202 Cal. 299 [260 Pac. 789]; *Morris* v. *Board of Education*, 119 Cal. App. 750 [7 Pac. (2d) 364, 8 Pac. (2d) 502].)

Finally the plaintiff contends that certain irregularities occurred in the call and conduct of the election of May 4, 1937, which avoided the proceedings and resulted in an invalid tax for the purposes of the plan established by the Board of Education. Of the three districts mentioned herein, the elementary school district of Los Angeles city is the smallest in area; the high school district is the next larger and the junior college district is the largest. However, the elementary school district is embraced entirely within the high school district, and the high school district is within the junior college district. The Board of Education submitted to the

voters in all three districts the following proposition: ''Shall the governing board of the Los Angeles City School District of Los Angeles County, Los Angeles City High School District of Los Angeles County, and Los Angeles Junior College District of Los Angeles County be authorized to establish a plan for a district retirement salary for the teachers and such other employees of such districts as such governing board may determine.'' The submission to the electors of the proposition in the form stated was in accordance with section 5.1101, added to the School Code, permitting consolidation of elections for several districts when the same board is the governing board of more than one district, and prescribing the wording of the proposition to be submitted accordingly which is substantially identical with that drafted by the board and submitted at the election of May 4th. The facts shown in the record bearing upon the plaintiff's contention that irregularities existed have been examined. It appears that 95 per cent of the registered voters live in the territory comprising the elementary school district, and therefore in territory which is common to all three districts. At the election 206,353 votes were cast in favor of the proposition, and 84,178 against it. In the precincts outside the elementary school district a total of 2,673 votes was cast, 675 of which were unfavorable to the proposition. It may not be supposed that those voting favorably to the establishment of a plan for all three districts would so have registered their choice if they had been in favor of establishing a plan for only one district. The manner of submitting the proposition was not contrary to the act. The legislature might well have contemplated that boards of education could properly determine that such a plan should encompass all three such districts governed by one board, or none at all. ▆▆ These facts and considerations also support the finding of the trial court that misdescription of outlying precincts in the notice of election did not mislead the voters, was immaterial and did not affect the result of the election. Such alleged error related to merely directory provisions. Technical errors or irregularities arising in carrying out directory provisions which do not affect the result will not avoid the election. (*Rideout* v. *City of Los Angeles,* 185 Cal. 426, 430 [197 Pac. 74] ; *East Bay Mun. Utility Dist.* v. *Hadsell,* 196 Cal. 725 [239 Pac. 38].) The trial court's finding was a proper application of the policy.

that an election will not be declared a nullity, if upon any reasonable basis such a result can be avoided.

The judgment of the trial court denying to the plaintiff the relief sought by her is affirmed.

Curtis, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.