[Civ. No. 13044. Second Dist., Div. Two. Aug. 4, 1941.]

SAMUEL H. BOWMAN, Appellant, v. LOS ANGELES CITY BOARD OF EDUCATION et al., Respondents.

Joseph Scott and J. Howard Ziemann for Appellant.

J. H. O'Connor, County Counsel, and W. B. McKesson, Deputy County Counsel, for Respondents.

Ray C. Eberhard, as *Amicus Curiae,* on Behalf of Respondents.

MOORE, P. J.—Petitioner sought by writ of mandate to compel respondent board to disregard certain provisions of the "Rules and Regulations for the Operation of the District Retirement Plans of the Los Angeles City School District, the Los Angeles City High School District," etc. After a demurrer had been sustained without leave to amend, a judgment of dismissal was entered from which petitioner takes this appeal.

Petitioner Samuel H. Bowman is a retired school teacher. He had served continuously as a certificated teacher and as principal in respondent district for a total of 26 years, 112 days. During petitioner's incumbency a plan for the payment of retirement salaries to the employees of the district was adopted. Subject to the provisions of such plan, petitioner retired June 30, 1940. He declined to accept a retirement salary in the sum of $50 per month claiming that he was entitled to the sum of $90.46 monthly as his pension. In his petition, he alleged that in devising the retirement plan, respondent took into consideration the benefit of $50 per month to which petitioner was entitled from the Teachers' Permanent Fund provided by the state (School Code, secs. 5.800 et seq.) and that by reason thereof the plan is illegal in that it discriminates against the certificated teachers by placing a limitation of $600 per year upon their benefits from the district while allowing non-certificated employees a maximum benefit of $1200 per year. It is this limitation upon the benefits to be received which petitioner demands should be disregarded by respondent in fixing the pension to be paid petitioner by the district.

In order to test the validity of the provision under attack, it will be necessary to review the legislative background of the District Retirement Plan. By statutory enactment in 1937, (ch. 59, same as Part V of the School Code, secs. 5.1100 et seq.) any school district, except those of a city or county which already pay retirement salaries, is authorized in its discretion to submit to the electors of such district the propo-

sition of establishing a plan for retirement salaries under the provisions of the statute, payable to all certificated teachers fulfilling requirements of the plan, and to such other employees as the governing board may determine who may retire under such a plan. (Sec. 5.1100.) Every employee of the district at the time of the adoption of such plan who agrees to be subject to the burden of the retirement plan is entitled to the benefits and is bound by the burdens thereof. (Sec. 5.1102.)

Section 5.1103 is as follows: *"Contributions must accord with recent prevailing rates: Bases of retirement salary: Duty to revise plan: Approved plan: Taxation for costs.* That such plan shall not be adopted or established until the governing board, after such inquiry and hearing as it may direct, shall find that the respective contributions of said teachers and other employees and the district provided for in said plan, are substantially in accordance with the more recent generally prevailing rates of such contributions in public institutions which have established retirement systems, and that such plan is in accordance with sound business practice and with recognized actuarial methods.

*"Bases of retirement salary.* That such plan may provide that the retirement salary shall be a stipulated monthly sum, or that all benefits under the retirement feature of said plan shall be based upon the monthly salary for each year of future active service in the district earned by said employee up to the date of retirement and upon the average monthly salary earned by the teacher or other eligible employee during the year immediately preceding the adoption of said plan and the number of years of past active service of said employee in the district, and subject to such provisions as may be made in said plan for minimum benefits, but no employee with less than fifteen years' service in the district prior to normal retirement age shall receive the benefit of any minimum; provided, however, that in no instance shall such retirement benefits be based upon or allowed for any amount of salary in excess of the sum of $500 per month.

*"Duty to revise plan.* That such governing board, after the adoption of such plan, shall at regular intervals, each not exceeding a period of five years, secure a general survey and actuarial report of said plan, and said board shall from time to time amend said plan in such manner as may be found to be advisable to meet changed conditions, or, as in the light of experience, may be considered necessary.

"*Approved plan.* A plan under which, as a part thereof, the district establishing the plan agrees to pay to employees who may become entitled to retirement salaries within a specified period, not exceeding fifteen years, after the establishment of such plan, a specified sum or sums, which, during the life expectancy of such employees, will be approximately equal, in the aggregate, to the aggregate difference, during such life expectancy, between the maximum salary paid to employees in the respective class or classes of the retiring employees, and the salaries paid to beginning employees in such class or classes, shall be construed to comply with the provisions of this section requiring such plan to be in accordance with sound business practices and recognized actuarial methods.

"*Taxation for costs.* For the purpose of providing funds which may be necessary to make the payments required by any such district retirement plan, district taxes shall be levied and collected annually by such respective districts at the same time and in the same manner as other district taxes are levied and collected. Such tax shall be in addition to any other district tax now or hereafter authorized by law, and shall not be considered in fixing maximum rates of tax for school district purposes."

Section 5.1110 provides that the retirement salaries "shall be in addition to any other retirement salaries received by any teacher under Part IV of this division."

On May 4, 1937, pursuant to the authorization of the cited act, respondent board submitted to the electors of the district the question as to whether it should devise and adopt a retirement plan for certificated teachers and non-certificated employees. Pursuant to the instructions received from the electorate, respondent board adopted a plan under which it has offered to pay petitioner the sum of $50 per month as his pension from the district.

Under section 5 of the Retirement Plan, it is provided: "(3) If the member has a prior service certificate in full force and effect, a pension of one seventieth of the member's average annual earnable compensation during the year of a creditable service immediately preceding the date of establishment, multiplied by the number of years of prior service creditable to him, except that the pension allowed on account of prior service to any member who is a duly certificated teacher at the date of establishment shall not exceed $600" etc.

Inasmuch as petitioner's salary for the year 1936–1937 was $3200, petitioner claims to be entitled to 1/70th of his annual salary at the time of the adoption of the retirement plan multiplied by the number of years during which he served as teacher and principal in the district. Expressed mathematically, his annual pension would be derived as follows: $\frac{\$3200 \times 23.7466}{70}$ which amounts to $1085.46 per year or $90.46 a month.

■ Since the act authorizes the board to provide for only minimum benefits and does not authorize it to set a maximum limit to the benefits to be received, it is contended that it was the legislative intent to leave the retirement benefits free from curtailment by "categorical limitation." In support of his argument, he points to the provision for the maximum monthly salary of $500 that may be used as a base for calculating retirement benefits. Under familiar rules of construction, says petitioner, it is a fair inference from the provisions of the act that the legislature could not have intended that the governing board was empowered to fix the maximum limitations upon the pensions for teachers. (Citing 25 R. C. L. 229; *Davis* v. *County of Los Angeles*, 12 Cal. (2d) 412 [84 Pac. (2d) 1034].) But such power has a logical implication. The authority to devise a plan to pay pensions to any group necessarily conveys the power to prescribe all details not expressly prohibited. ■ The same rule of construction that has always been applied to authorizations to govern applies here. Essentials, omitted from the grant by the origin of power, not contrary to it, are to be supplied by the governing board in possession of more intimate knowledge of the situation. The motivating cause that induced the delegation of such authority was that the governing board should know the extent of the ability of the district to balance a budget for the support of superannuated teachers in their retirement.

In excluding from the computation of the amount of retirement allowance the amount of salary in excess of $500 per month and more, it must have been the thought of the legislature that those who received incomes in excess of $500 per month are competent to save for old age and for that reason such class of teachers shall receive no benefits on the excess over $500.

■ The act is a recognition of the principle of local autonomy. It did not attempt to provide all the details for a

district retirement plan. Its aim was to establish sound principles and to prescribe general policies to be followed by all districts but to leave to each the privilege of incorporating such details as might be congenial to the locality. Had the legislature designed to place all teachers on the same footing and to impose the same taxes on every locality, the statewide plan, as expressed in Part IV (secs. 5.800 et seq.) with common benefits to teachers of each class would have sufficed. Having established a universal pension to be paid from a state fund, it was deemed to be wise not to impose upon the cities, districts and counties heavier obligations without specific instructions from their own electorates. The Davis case pointed out that the legislature delegated "only administrative duties" to establish details of plans for pensions "subject to limitations and requirements of the Act." But in defining the powers of the board as "administrative duties" the Supreme Court could not have intended that the governing board should have only clerical work to do in devising the retirement plan. To devise comprehends the power to create. Pursuant to the authority granted, it was proper for the governing board to devise and establish a plan whereby a maximum limitation of $50 per month is imposed upon teachers who are already the recipients of other benefits.

 Respondent board was authorized to devise a retirement plan if instructed to do so by the people. (Sec. 5.1111.) Such authorization and instruction must have contemplated that the board would do something more than merely classify the employees for pensions, prepare a budget for their payment and fix the time for retirement. All such details could have been prescribed by the legislature in Part IV of the School Code. But because economic and social conditions of school districts may differ widely, it was determined to be a better public policy to allow each district to determine its additional obligations "in accordance with sound business practice and with recognized actuarial methods." (Sec. 5.1103.)

Not only might the governing board advise and plan but it was authorized to amend the plan "in such manner as may be found to be advisable to meet changing conditions." This authorization to amend the plan vests the governing board with extensive powers. (Sec. 5.1103.) It contemplates the exercise of the board's discretion in placing a maximum limi-

tation upon retirement benefits and in determining the amounts to be paid. It recognizes that conditions differ in the several localities and that conditions in any locality must change from time to time. The local board is in a position to evaluate such changes. If it must determine when and what changes are to be made, it surely is vested with power to determine maximum benefits at the time of devising the plan.

██ Because the retirement salary is in addition to that paid petitioner by the state (sec. 5.1110) petitioner contends that respondent board improperly considered the state pension in the sum of $600 annually from the state. Inasmuch as the act specifically recites that the district pension shall be in addition to any other pension received by the retired teacher, the legislature must have intended that the state pensions should be known to the board in fixing the district pension. No good reason appears why it should not have been so regarded. It was logical and judicious to do so. Had there been no state pension, the board indicated what it might have done for teachers by its provision for non-certificated employees. But since other provision had been made for the teachers, the board wisely considered the power of the revenue producing source by using its knowledge of other income payable to retired teachers. It realized that the source of retirement salaries is identical with that of salaries paid for active service. Both must be paid by the citizens of the district. In dispensing the revenues of the district in payment for "prior services" no sound reason can be advanced why the board should not determine the amount to be paid as in the case of current services.

██ Petitioner contends that the plan of fixing the maximum retirement salary for teachers is discriminatory and therefore unconstitutional because the non-certificated employees of the district receive $1200 annually after retirement. But that, likewise, is a detail to be determined by the governing board. In providing for the economic security of the employees of the public schools system during the years of their retirement, the legislature has not undertaken by Part IV (secs. 5.800 et seq.) or by Part V (secs. 5.1111 et seq.) to do more than provide for mere subsistence. No extravagant pension is allowed to any class of teachers. Under Part IV no retirement salary is provided for any employee except the teachers. Facing that condition in 1937, the governing board of the wealthy and extensive district of respondents deter-

mined partially to correct what must have appeared to them as an injustice when they made provision for a decent subsistence of the non-certificated employees of the district. By allowing such employees upon retiring to receive the sum of $1200 per annum, the board merely attempted to correct a vicious disparity, which had resulted from the legislation for statewide teachers' retirement pay. (Secs. 5.800 et seq.) While it is true that the act providing for the State Teachers Retirement System requires contributions from all teachers and librarians to the "teachers' permanent fund" and to the "annuity deposit fund," at the same time the entirety of both funds had been paid to the teachers of respondents' district with the revenues derived from that district. The contributions there made were a form of·deferred salary payments just as are the district retirement salaries established by respondent board.

These facts emphasize that there was no discrimination against the teachers in the act of granting an increase in the salaries of non-certificated employees and to defer the payment of such increase to a future time. The power to increase a salary (sec. 5.781) carries with it the power to defer the payment of such increase. To defer to the years of retirement the payment of a portion of the salaries of the janitors and the gardeners could not be seriously deemed a discrimination against the teachers who contribute nothing toward the fund of the district out of which their retirement salaries are to be paid.

Neither this court nor any other will disagree with the claims of petitioner that the retirement salaries should be such as would enable faithful teachers to live in decency in the years of their retirement. But neither the sentiments of this court nor of any other institution should prevail against the act of the legislative body which determines the policy of the state. Salaries to be paid those who serve the state are not the concern of the courts but rather are we to be guided by the legislative intent with reference thereto.

The judgment is affirmed.

Wood, J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 2, 1941.