[Civ. No. 19352. First Dist., Div. One. July 15, 1960.]

STANLEY E. BEHNEMAN et al., Appellants, v. ALAMEDA-CONTRA COSTA TRANSIT DISTRICT et al., Respondents.

Marvin C. Hix for Appellants.

Robert E. Nisbet and Orrick, Dahlquist, Herrington & Sutcliffe for Respondents.

BRAY, P. J.—Plaintiffs appeal from a judgment in favor of defendants entered upon an order sustaining demurrer without leave to amend.

## QUESTIONS PRESENTED

This action was brought by taxpayers to determine the validity of bonds issued by defendant transit district for a special transit service district.

1. Is the emergency clause in chapter 116 (Stats. 1959, p. 1967) valid?

2. Was the ordinance calling the bond election void?

(a) Can the transit district incur an indebtedness on behalf of the service district?

3. Is the service district void because the difference in the two districts is small?

4. Was a two-thirds vote required?

5. Was the publicity for the issuance of the bonds misleading?

6. Validating acts.

## COMPLAINT

It alleges that pursuant to section 27406 of the Public Utilities Code, a portion of chapter 116 (Stats. 1959, p. 1967 et seq.) the board of directors of defendant transit district adopted a resolution creating within its boundaries a special transit service district covering the same territory as the district itself except for four precincts having 60 registered voters.

Thereafter the board, pursuant to section 27451 of the Public Utilities Code, also included in said chapter 116,

adopted an ordinance providing for an election to be held October 20, 1959, for the issuance of $16,500,000 bonds of the transit district on behalf of the service district. At that election a majority of the voters voted in favor of the issuance of the bonds.

· 1. *Emergency Clause is Valid.*

Plaintiffs state that they are not attacking the validity of the formation of the service district, but only the issuance of the bonds; yet they contend as one of the reasons for the alleged invalidity of the bonds that chapter 116, Statutes of 1959, page 1967 et seq., which provides for the formation of a service district and the issuance by the transit district of bonds for the benefit of the service district, did not take effect under its emergency provision on April 10, 1959, or until September 18, 1959, eight days after the ordinance calling the bond election was adopted. Hence, plaintiffs, on the one hand, are not challenging the validity of the service district, which could only be valid if chapter 116 went into effect on its passage and thus was effective when the transit district on April 10 formed the service district under the chapter's provisions. On the other hand, plaintiffs challenge the validity of the ordinance of September 10 calling the bond election because they claim the emergency clause was void and chapter 116 did not become effective until September 18. Obviously, if chapter 116 became effective to permit the formation of a service district under it, it became effective as to any other of its provisions.

Plaintiffs contend that the emergency clause failed under article IV, section 1 of the Constitution because it did not contain a sufficient statement of the facts showing the necessity for the act to become effective immediately, and that it changed the duties of officers. Section 1 provides: "Whenever it is deemed necessary for the immediate preservation of the public peace, health or safety that a law shall go into immediate effect, a statement of the facts constituting such necessity shall be set forth in one section of the act . . . provided, however, that no measure . . . changing the . . . duties of any officer . . . shall be construed to be an urgency measure."

Section 48 of chapter 116 provides: "This act is an urgency measure necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are:

"Because of recent court decisions and the outcome of

recent bond elections the provisions of this act are urgently required to permit districts already formed under the Transit District Law to take immediate action to carry out the purposes of such law.''

In *Davis* v. *County of Los Angeles* (1938), 12 Cal.2d 412 [84 P.2d 1034], the court pointed out that there had been a conflict in the authorities on the question whether a legislative declaration of urgency is binding on the courts, the weight of authority, however, holding that the declaration of the existence of the necessity is exclusively within the legislative function and ''if the prescribed procedure has been followed the law is immediately effective and the declaration is not subject to review in the courts.'' (P. 420.) The court then referred to the cases on the subject in California and said (p. 422) : ''Since the adoption by the people in 1911 of section 1, article IV of the Constitution, reserving the powers of the initiative and the referendum, the courts have nevertheless adhered to the fundamental philosophy that questions of fact, necessity and expediency are for the legislature. It has been felt that the requirement for a statement of the facts constituting the necessity in emergency legislation does not modify the principle nor bestow upon the judiciary power to declare the declaration invalid unless it 'appears clearly and affirmatively from the legislature's statement of facts that a public necessity does not exist.' (*Stockburger* v. *Jordan*, 10 Cal.2d 636 [76 P.2d 671], citing *Hollister* v. *Kingsbury*, 129 Cal.App. 420 [18 P.2d 1006], and *In re McDermott*, 180 Cal. 783 [183 P. 437].) Thus in the Stockburger case it was also said : 'The legislature having determined by the declaration contained in said act that the enactment of said statute was necessary for the immediate preservation of the public peace, health and safety, and the determination of the legislature of the existence of such necessity being conclusive upon the courts, we are precluded in these proceedings from further questioning the necessity for such legislation.'

''There is no clear and affirmative showing on the face of the statement of facts included in the present act such as would justify this court in concluding that the legislative declaration of the existence of a public necessity was invalid.''

So here, there is no clear and affirmative showing on the face of the statement of facts included in the act that the declaration of necessity in the act is invalid. The Legislature referred to the ultimate facts that court decisions and outcome

of bond elections required that chapter 116 (which amended the act of 1955 providing for the formation of a transit district in Alameda and Contra Costa Counties (Stats. 1955, ch. 1036, § 2) which act had been under attack in both court proceedings and bond elections), go into effect immediately. Particularly is this so when the necessity for the proper and immediate functioning of transit districts is shown in section 24561, Public Utilities Code (Stats. 1955, p. 1951), which provides: ''It is necessary that a district be formed in Alameda and Contra Costa Counties to meet the transit problem, for the area involved covers more than one city and is in two counties; moreover, the problem is unique to these counties due to their geographic location in relation to the centers of employment of many of their residents. . . .

''Also, there are existing transportation facilities in the area which may be taken over by the transit district and special provisions relating to this transfer and to the employees of these facilities, as provided for by this division, are necessary to protect the public interest.'' (Pp. 1951-1952.)

██ ''If there is any doubt as to whether the facts do or do not state a case of immediate necessity, that doubt should be resolved in favor of the legislative declaration . . . or if the legislature 'states facts constituting an emergency so that its action cannot be said to be arbitrary, courts cannot say that it has not performed its constitutional duty, even though they may disagree with the legislature as to the sufficiency of declared facts to constitute a sufficient reason for immediate action.' (*Baker* v. *Hill,* 180 Ark. 387 [21 S.W.2d 867, 868].)'' (*Davis* v. *County of Los Angeles, supra,* 12 Cal.2d at pp. 422-423.)

██ This brings us to a consideration of plaintiffs' claim that because chapter 116 contains provision for the board to create a service district and to call an election to authorize the issuance of bonds for such special district, such provision makes the act a ''measure . . . changing the . . . duties of any officer'' which the Constitution states cannot be construed to be an emergency measure. However, such provision does not change the duties of the board. The transit district act itself, of which chapter 116 is merely amendatory, gives the board broad powers including that of calling bond elections. In *Davis, supra,* it was contended that Statutes of 1937, page 153, authorizing the establishment by school boards of retirement plans for a school district, imposed additional duties upon

the board, the county treasurer, county auditor, county school superintendent, and county counsel, and therefore could not be an urgency measure. In upholding the emergency clause the court said (p. 424) : "Inasmuch as the provisions of the act or the code sections do not impose undue or material and substantial additional burdens or duties upon the officers mentioned, different in nature from those already required of them by law, we conclude that such provisions did not produce a 'change' either in the salary or duties of those officers." The duties imposed upon the members of the board in chapter 116 are merely those incidental to their offices and ones which materially would devolve upon them.

As was said in *Martin* v. *Riley* (1942), 20 Cal.2d 28 [123 P.2d 488], dealing with the question of whether an act providing for the formation of a state guard and which provided "certain restrictions, limitations, and additions in the performance of the duties of" (p. 37) the Governor and the Adjutant General, and the Controller, constituted such a change of duties as would prevent the act from taking effect as an emergency measure. ▆▆ "An addition or subtraction in relation to the volume of the duties required to be performed by an officer, which does not substantially affect the primary duties of his office, is not such a change of duties as would prevent immediate effectiveness of legislation properly declared to be urgent. The changes here enacted are for the most part merely additions to similar duties already imposed by law upon the particular officers. It may be said that if the duty thus prescribed is one which falls within the primary duties a particular officer is required to perform, generally it would not be a change of his duties specifically to require him to perform it." (Pp. 37-38.)

▆▆ There is nothing presented in our case which would justify a conclusion that chapter 116 changed the primary duties of any officer within the meaning of the Constitution. *Stockburger* v. *Jordan* (1938), 10 Cal.2d 636 [76 P.2d 671], where the court held that chapter 304 of Statutes of 1937 (Stats. 1937, p. 665) could not take effect as an emergency measure because it changed the duties of the director of finance, is not in point. There the act which related to certain lands owned by the state which were capable of producing oil and gas gave the director of finance "extensive powers" which he did not theretofore possess. (P. 643.) No such situation exists here.

## 2. *The Ordinance Calling the Election.*

Plaintiffs' main attack on the ordinance is that chapter 116, giving the transit district board the power to call an election for the issuance of bonds for the benefit of the service district, was not in effect on September 10, when the ordinance calling the election was passed. As we have shown, it became effective April 10.

Additionally, plaintiffs contend that the ordinance is void because, say they, a transit district has no power to issue bonds on behalf of a service district.

(a) *Can the Transit District Incur an Indebtedness on Behalf of the Service District?*

Section 27451, Public Utilities Code, included in chapter 116, provides that it can. Plaintiffs point to section 27441, Public Utilities Code, which provides: "A special transit service district has no separate corporate existence," and contend that because it lacks corporate existence, bonds may not be issued by the transit district in its behalf, in spite of section 27451. Plaintiffs cite no authority for their contention. While a service district has no separate corporate existence it "shall be deemed to be a taxing subdivision of the district, and within each special transit service district the board may levy and collect or cause to be collected taxes for any lawful purpose . . ." (§ 27441). The service district is a public agency and we can see, and have been pointed to, no good reason why the parent transit district should not be given the right, as section 27451 does, to issue bonds in behalf of the service district, after approval by the voters of the latter district.

*Potter* v. *County of Santa Barbara* (1911), 160 Cal. 349 [116 P. 1101], dealt with bonds of a road division issued by the board of supervisors. Just as plaintiffs do here, the plaintiff there contended that bonds could not be issued on behalf of someone or something that does not exist. The court said (p. 356) : "It is argued that a permanent road division under this act is not a corporate entity, has no corporate existence, and cannot, therefore, issue bonds. But the answer to this is that it does not issue bonds. The agency for the bond issue is the board of supervisors, and the tax for the payment of the bonds is imposed upon the property of the division. As was said of reclamation districts in *People* v. *Reclamation District,* 117 Cal. 121 [48 P. 1016], 'the district (here division) is part of the scheme for conducting a public work, and not for self-

government'; . . ." In our case it is the transit district which issues the bonds.

### 3. *Small Difference in the Districts.*

 Plaintiffs claim that the service district is void because, except for four precincts, the service district covers the same territory as the transit district and has only 60 less voters than the latter. Plaintiffs cite section 3533, Civil Code, "The law disregards trifles," but fail to point out what is wrong with this situation. Section 27401 provides: "One or more special transit service districts may be created within the boundaries" of a transit district. The size of such service district is a matter for determination by the board of the transit district, and the residents of the service district. Moreover, the transit district could have made the service district coterminous with it. See *Stuckenbruck* v. *Board of Supervisors* (1924), 193 Cal. 506 [225 P. 857], where the health district created by the board of supervisors was coterminous with the county; *Federal Construction Co.* v. *Ensign* (1922), 59 Cal.App. 200 [210 P. 536], and *McGarry* v. *Ellis* (1921), 54 Cal.App. 622 [202 P. 463], where the particular assessment district included all land in the respective city.

### 4. *Was a Two-Thirds Vote Required?*

 The bonds carried by a majority vote only. Section 27454, Public Utilities Code, requires only a majority vote to authorize the issuance of the bonds. Sections 26211 and 25841 requiring a two-thirds vote do not apply to bonds for the benefit of a service district.

### 5. *Was the Publicity Misleading?*

 Plaintiffs contend that publicity indicated that the bonds could be retired from the income of the district, while "there is not a ghost of a chance of the bonds being so retired" and that the ballot concealed from the public that the bonds were to be used to purchase the Key System, which plaintiffs allege upon information and belief is the intention of the district. The ballot measure states: "Shall the Alameda Contra Costa Transit District incur a bonded indebtedness on behalf of Special Transit Service District No. 1 in the principal amount of $16,500,000 to pay the cost of acquiring, constructing and completing the following improvements, to-wit Transit facilities within the boundaries [of the service district] . . . including automotive passenger buses, service equipment and vehicles, buildings, stations . . . easements or rights of way

. . . any and all facilities necessary or convenient for said transit facilities, and all other works, lands, structures, rights, equipment or other property necessary or convenient for said transit facilities.'' There is nothing misleading on this ballot. It gave the voter the opportunity of voting ''yes'' or ''no'' on the issuance of the bonds, the proceeds from which it plainly showed could be used either to acquire existing facilities or to build new ones, or a combination of both. Even though it were contemplated that the Key System was to be purchased, there is no requirement that the ballot so show. The broader power was being asked and voted on. ■■■ ''The rule is that public bodies may submit bond propositions in broad and general terms.'' (*Sacramento M. U. Dist.* v. *All Parties* (1936), 6 Cal. 2d 197, 202 [57 P.2d 506].) ■■■ The complaint alleges that the Key System facilities had not been appraised at the time of the election, so it is difficult to see why the ballot should refer to the possible purchase of a system whose cost was not yet determined.

■■■ The complaint alleged that publicity issued by defendants was designed deliberately to mislead the voters to believe that the proposed bonds could be paid off by fares to be charged for use of the service district's facilities. Assuming that such publicity was given (admittedly no official or other pamphlet accompanied the sample ballots sent the voters), the ballots showed clearly that the bonds were not revenue bonds. Whether the fares that will be received will be sufficient to pay off the bonds is a matter that could only be told by future experience. See *Golden Gate Bridge etc. Dist.* v. *Felt* (1931), 214 Cal. 308, 328 [5 P.2d 585], where it was claimed that publicity indicated that taxes to pay the bonds could only be levied ''for preliminary expenses.'' The court pointed out that the proposition as it appeared on the ballot showed otherwise.

### 6. *Validating Acts.*

In view of our determination that chapter 116 took effect upon April 10, 1959, we deem it unnecessary to discuss the effect of the first validating act of 1959 (Stats. 1959, p. 3723, effective July 6) which, if applicable to a service district, validated the formation of the service district, or at least provided a six-months' limitation on any action attacking the formation of the service district. Nor do we deem it necessary to determine the effect on the limitation of actions in the first validating act by the enactment of the second validating act

of 1959 (Stats. 1959, p. 3728) which also provided a six-months' limitation. It should be noted, however, that chapter 116 provided (§ 27456) that any proceeding denying the validity of any special transit service district must be brought within three months after the adoption of the resolution forming the service district. This action was filed January 15, 1960. Hence any attack on the validity of the formation of the district would have been barred.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 7, 1960. Schauer, J., was of the opinion that the petition should be granted.