[Civ. No. 22764.   First Dist., Div. Two.   Oct. 20, 1965.]

JACK AZEVEDO et al., Plaintiffs and Appellants, v. FRANK M. JORDAN, as Secretary of State, etc., Defendant and Respondent.

Richard M. Frisk for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Charles A. Barrett, Assistant Attorney General, and James Ganulin, Deputy Attorney General, for Defendant and Respondent.

TAYLOR, J.—On this appeal from the trial court's orders denying appellants' requests for a preliminary injunction and for a temporary restraining order to prevent respondent Secretary of State from accrediting the members of the Republican State Central Committee, pursuant to section 8202.35 of the Elections Code, the principal question presented is the constitutionality of the 1964 amendment (Stats. 1965, First Ex. Sess. 1964, ch. 147, p. 527) of the statute. Appellants argue that the court below arbitrarily denied the relief requested as the 1964 amendment is not a valid urgency measure, contains an unreasonable and arbitrary classification, and retroactively deprives them of vested rights.

The facts are not in dispute. Both appellants were candidates for the State Assembly nominated at the June 2, 1964, Republican primary election, and as such qualified as nominee delegates to the Republican State Convention (Elec. Code, § 8002, subd. (b)). At that time, each delegate to a state convention was allowed to make three appointments to the state central committee and each "holdover" delegate (i.e., incumbent office holder) (Elec. Code, § 8002, subd. (a)) or a nominee delegate from a district represented by an incumbent was allowed to make two extra appointments, or a total of five (Elec. Code, § 8202.3, as amended by Stats. 1963, ch. 2017, § 6).

The 1964 amendment, so far as pertinent, renumbered former section 8202.3 as 8202.35 and provided that a minority

party[1] "holdover" delegate or nominee delegate from a district represented by an incumbent, was to appoint five additional members, or a total of eight, to the state central committee (Stats. 1965, First Ex. Sess. 1964, ch. 147, p. 527, § 1).

This amendment, by its urgency provision, became effective immediately on June 17, 1964. Shortly thereafter, on June 26, 1964, appellant Azevedo filed a petition for writ of prohibition to restrain the respondent from proceeding under the provisions of section 8202.35 on the ground that it was an invalid urgency measure. After a hearing, the writ was denied on July 15, 1964.[2]

Later the same day, respondent, as required by statute (Elec. Code, §§ 8011-8013, 8202.3) mailed to each delegate to the Republican State Convention the prescribed notice to delegates, and the forms for appointment of members of the central committee and for proxies for attendance at the Republican State Central Committee meeting, set by statute for August 2, 1964 (Elec. Code, §§ 8002, 8003, 8011, 8019, 8202).

On July 27, 1964, appellants filed this action seeking to restrain respondent from accepting and accrediting the delegates to the state central committee. The court refused to issue a temporary restraining order, but issued an order to show cause requiring the appearance of respondent on July 31. Respondent answered, denying the material allegations of the petition and indicating that the appropriate notices and forms pertaining to the appointment of members to the committee had been mailed and were being processed for completion by the statutory deadline.

After a hearing argued on July 31, 1964, the court denied appellants' request for preliminary injunction and this appeal ensued. In the meantime, the membership list was completed on July 31, 1964, and presented to the chairman of the state central committee at the meeting of August 2, 1964. Appellants filed their notices of appeal on July 31 and August 3, 1964.

Preliminarily, we turn to respondent's contention that the present controversy has been rendered moot by subsequent events. Respondent argues that while injunctive relief may have been needed by appellants prior to the state central committee meeting of August 2, 1964, it does not again meet until January 16, 1966, and that by that time, a determination of

---

[1]I.e., the political party with which there are affiliated less than 3,200,000 voters.

[2]No appeal was filed from that proceeding.

the invalidity of Elections Code section 8202.35 may be made in due course by a disposition on the merits. However, the constitutionality of the 1964 amendment to section 8202.35 of the Elections Code is a question of general public interest and of significance to all members of the state central committee appointed in 1964 and it has been held that such questions do not become moot by reason of the fact that the ensuing judgment may not afford the precise relief sought by a particular party to the action (*DiGiorgio Fruit Corp.* v. *Department of Employment*, 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487]; *County of Madera* v. *Gendron*, 59 Cal.2d 798, 803-804 [31 Cal.Rptr. 302, 382 P.2d 342]).

I. Is the Statute a Valid Urgency Measure?

■ Appellants question whether the statute here involved was appropriately made an urgency measure. Section 3 of chapter 147 provides: ''This act is an urgency measure necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are:

''In order that this act may operate with respect to state and county central committees to be formed in 1964, it is essential that it go into effect immediately.''

■ The Legislature has authority to determine when urgency measures are necessary and when such necessity has been determined as provided by the Constitution,[3] the judgment of the Legislature is final and will not be interfered with by the courts unless no declaration of the facts constituting such emergency is included in the act or unless the statement of facts is so clearly insufficient as to leave no reasonable doubt that the urgency does not exist (*Livingston*

---

[3] Article IV, section 1 of the state Constitution provides, so far as pertinent: ''No act passed by the Legislature shall go into effect until 90 days after the final adjournment of the session of the Legislature which passed such act, except acts calling elections, acts providing for tax levies or appropriations for the usual current expenses of the State, and urgency measures necessary for the immediate preservation of the public peace, health and safety, passed by a two-thirds vote of all the members elected to each house.''

''Whenever it is deemed necessary for the immediate preservation of the public peace, health or safety that a law shall go into immediate effect, a statement of the facts constituting such necessity shall be set forth in one section of the act, which section shall be passed only upon a yea and nay vote, upon a separate roll call thereon; . . . Any law so passed by the Legislature and declared to be an urgency measure shall go into immediate effect.''

v. *Robinson,* 10 Cal.2d 730, 740 [76 P.2d 1192]). ██ The recitals of necessity and public interest in legislation must be given great weight and every presumption made in favor of their constitutionality (*Monterey County Flood Control & Water Conservation Dist.* v. *Hughes,* 201 Cal.App.2d 197, 209 [20 Cal.Rptr. 252]).

In *Davis* v. *County of Los Angeles,* 12 Cal.2d 412 [84 P.2d 1034], the court said: "Since the adoption by the people in 1911 of section 1, article IV of the Constitution, reserving the powers of the initiative and the referendum, the courts have nevertheless adhered to the fundamental philosophy that questions of fact, necessity and expediency are for the legislature. It has been felt that the requirement for a statement of the facts constituting the necessity in emergency legislation does not modify the principle nor bestow upon the judiciary power to declare the declaration invalid unless it 'appears clearly and affirmatively from the legislature's statement of facts that a public necessity does not exist'. (*Stockburger* v. *Jordan,* 10 Cal.2d 636 [76 P.2d 671], citing *Hollister* v. *Kingsbury,* 129 Cal.App. 420 [18 P.2d 1006], and *In re McDermott,* 180 Cal. 783 [183 P. 437].)" (P. 422.)

In the instant case, there is no clear and affirmative showing on the face of the statement of facts included in the act that the declaration of necessity is not a valid one. The Legislature was seeking to provide for a larger state central committee for the minority party to permit more effective handling of the ensuing general election campaign by allowing incumbent office holders and nominees from districts which had demonstrated successful campaign results, to have a greater voice in party affairs by appointing an additional number of members to the state central committee. When the Legislature referred to the fact that the amendment was to operate with respect to the state central committees formed in 1964, it knew that the committees had to be formed and meet within a specified timetable. In view of the length of the 1964 First Extraordinary Session and the mandatory statutory meeting date of the Republican State Central Committee, the accomplishment of the legislative purposes in time for the 1964 general election could only be insured by making the measure an urgency one.[4] ██ We hold that the mandatory

---

[4]The instant case is somewhat similar to *Behneman* v. *Alameda-Contra Costa Transit Dist.,* 182 Cal.App.2d 687 [6 Cal.Rptr. 382]. In that case, the court was asked to determine the validity of a legislative enactment amending the statutory provisions authorizing the formation of transit districts in certain counties including the question of whether the measure

meeting date of the central committee and the forthcoming general election were sufficient justification of immediate necessity and that the declaration of chapter 147 meets the constitutional requirement of urgency legislation. In so holding, we have in mind that all doubts must be resolved in favor of the legislative declaration (*Davis* v. *County of Los Angeles, supra*).

## II. EQUAL PROTECTION

■ Appellants here argue that the distinction between delegates from incumbent districts and other delegates to the state convention made by section 8202.35 is unreasonable and discriminatory in violation of the equal protection clause of the federal Constitution (Amend. XIV, § 1) and the prohibition against special laws of the state Constitution (art. IV, § 25; *Werner* v. *Southern Cal. etc. Newspapers,* 35 Cal.2d 121, 131 [216 P.2d 825, 13 A.L.R.2d 252]). ■ There is no constitutional requirement of uniform treatment of all persons but only that there be a reasonable basis for each classification (*Taliaferro* v. *Hoogs,* 236 Cal.App.2d 521, 527 [46 Cal.Rptr. 147]). The presumption in favor of the classification prevents extensive review unless it is plainly arbitrary (*County of Los Angeles* v. *Southern Cal. Tel. Co.,* 32 Cal.2d 378, 393 [196 P.2d 773]).

■ A legislative classification will not be held invalid as a denial of equal protection if any set of facts can reasonably be conceived that would sustain the Legislature's determination (*Department of Mental Hygiene* v. *McGilvery,* 50 Cal.2d 742, 760 [329 P.2d 689]). ■ The question here is whether appellants have sustained their burden of showing that the distinction made by section 8202.35 between delegates to the state convention and incumbents or party nominees from incumbent districts, for the purpose of determining the number of appointments to the state central committee, is arbitrary and has no substantial relation to the purpose of the legislation (cf. *Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158]).

We note that a distinction for the purpose of allowing a

had been appropriately designated by the Legislature as an urgency measure. The constitutionally required statement of facts in that measure provided: ''Because of recent court decisions and the outcome of recent bond elections the provisions of this act are urgently required to permit districts already formed under the Transit District Law to take immediate action to carry out the purposes of such law.'' Basing its conclusion on the fact that the Legislature had referred to the ultimate facts the court held the urgency measure valid.

large number of appointments by delegates from incumbent districts has been present in the statutes since the 1961 amendment to the enactment of the predecessor provision (former § 8014 of the Elec. Code, Stats. 1961, ch. 23, p. 703, § 8014 amended by Stats. 1961, ch. 2223, p. 4579, § 1). The 1964 amendment provided for an increase in the number of appointments made by incumbents (or nominees from incumbent districts) of the minority party only and left the matter unchanged as to the majority party. To foster and preserve the political party system of the state, the Legislature apparently considered it essential to increase the size of the state central committee of the minority party.

The Legislature can take notice of political organizations and parties (*Socialist Party* v. *Uhl,* 155 Cal. 776, 786 [103 P. 181]). The duty of the state central committee is to conduct campaigns for its party's candidates (Elec. Code, § 8231) and its purpose it to win elections. A distinction in the committee's composition based on the inference that a larger number of appointments thereto made by those from areas where elections have been won may help the statewide party organization in running its campaigns would seem imminently reasonable. Such a distinction would also hold out an incentive to the less successful districts. Since the classification has a reasonable basis, this court cannot question the wisdom of the legislative decision. The determination as to what provisions are essential to attain the objects contemplated by section 2.5, article II of the state Constitution pertaining to the regulation of political parties is one peculiarly within the domain of the Legislature. If there is any theory upon which a statute might reasonably have been concluded by the Legislature to be essential, the courts may not interfere (*Heney* v. *Jordan,* 179 Cal. 24, 27-28 [175 P. 402]).

Appellants' contention that the distinction violates the principle of one man-one vote announced in *Baker* v. *Carr,* 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663], is without merit. The state central committee is not an elective representative body of the voters exercising sovereign powers and section 8202.35 in no way impairs the successful exercise of the franchise.

### III. DOES THE STATUTE RETROACTIVELY DEPRIVE APPELLANTS OF A VESTED RIGHT?

Appellants' contention concerning the retroactive effect of the statute is patently without merit as section 2 of chapter 147 expressly provides that the statute shall not apply to

central committees in existence at the time of its passage but only those formed in 1964. Nor is a statute necessarily retroactive merely because it draws upon facts antecedent to its enactment for its operation. The crucial question is whether the statute gives the previous transaction to which it relates some legal effect different from that which it had under the law when it occurred (*Holt* v. *Morgan,* 128 Cal.App.2d 113, 116-117 [274 P.2d 915]).

Appellants argue that their winning of a primary nomination created a "vested right" with all the statutory emoluments then in existence. They rely on *Taylor* v. *Nealon* (1938) 132 Tex.Rep. 60 [120 S.W.2d 586], and *Iles* v. *Walker* (1938) 132 Tex.Rep. 6 [120 S.W.2d 418]. These cases are not in point. They deal with election contests and simply hold that a person receiving the majority of votes in the primary election returns is entitled to the nomination as a vested property right. The question here is whether the statute is invalid because of its interference with rights which are changed prospectively only.

In the absence of constitutional restrictions, the sovereign power that creates an office may abolish it or change its tenure (*Martello* v. *Superior Court,* 202 Cal. 400, 408 [261 P. 476]). A public officer whose term and compensation are not established by the Constitution does not have a contract to hold either his office or salary against the will of the Legislature (*Mansfield* v. *Chambers,* 26 Cal.App. 499, 504 [147 P. 595]). The Legislature may change the term or compensation of a public officer while he is in office (*Spring Valley Water Works* v. *San Francisco,* 62 Cal. 3). Appellants as nominees do not possess the standing of public officers as they do not exercise a portion of the sovereign power of the state (*Stout* v. *Democratic County Central Committee,* 40 Cal.2d 91, 94 [251 P.2d 321]). We see no bar to the Legislature's prospective modification of the statutory rights accruing to appellants solely because of their status as nominees. The Legislature is virtually given plenary powers over political parties (Const., art. II, § 2.5; *Heney* v. *Jordan, supra,* 24, 27), and cannot be precluded from establishing and then reasonably modifying its statutory design for appointments to the state central committee.

The orders appealed from are affirmed.

Shoemaker, P. J., and Agee, J., concurred.